**John CIAMPA et al., Plaintiffs,**

v.

**Richard S. SCHWEIKER et al., Defendants.**

**Civ. A. No. 80–725–MA.**

United States District Court, D. Massachusetts.

April 14, 1981.

Peter V. Berns, Law Student, William H. Simon, Legal Services Institute, Jamaica Plain, Mass., Gerald Tutor, Cambridge & Somerville Legal Services, Cambridge, Mass., for plaintiffs.

Andrew M. Wolfe, Dept. of Justice, Washington, D. C., Joan C. Stoddard, Asst. Atty. Gen., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action for declaratory and injunctive relief against federal and state administrators of the Medicaid program, chal-

lenging their interpretation of an amendment to the Medicaid legislation, the "Pickle Amendment," 42 U.S.C.A. § 1396a (note), on statutory and equal protection grounds. The plaintiffs are a class of certain persons residing in Massachusetts and receiving Old Age, Survivors and Disability Insurance benefits (OASDI) (commonly known as "Social Security"), whom we describe in greater detail below. The plaintiffs, who are not receiving Medicaid, claim that the Pickle Amendment requires the defendants to classify them as automatically eligible for Medicaid. They challenge a federal regulation at 42 C.F.R. § 435.135 (1979) and state regulations in the Massachusetts Public Assistance Policy Manual (MPAPM) ch. I § F ¶ 2.b.(4) (to be codified in 106 C.M.R. § 325.030(B)(1)d.) and ch. IV § B ¶ ———(1)(c) [at pp. 13–14] (to be codified in 106 C.M.R. § 338.020(C)) (both promulgated November 20, 1980). The defendant, Richard S. Schweiker, is Secretary of the Department of Health and Human Services. The defendant, John D. Pratt, is Commissioner of the Massachusetts Department of Public Welfare. Jurisdiction is proper under 28 U.S.C. § 1331(a).[1] The parties have moved for class certification, and both parties have filed motions for summary judgment.

It appears from the memoranda, affidavits, and exhibits filed by both parties that there is no genuine issue as to any material fact.[2] The case may therefore be disposed of on summary judgment. Fed.R.Civ.P. 56(c); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

## I. *Class Certification*

▉ Under Fed.R.Civ.P. 23, determination of whether an action is to be main-

tained as a class action should be made "as soon as practicable" after commencement of the suit. We certify the class because we find it is numerous, its members pose common questions of law and fact, the named parties' claims are typical of those of the class, and the named parties will provide fair and adequate representation. Fed.R.Civ.P. 23(a). We also find, pursuant to Fed.R.Civ.P. 23(b)(2), that the defendants have refused to act on grounds generally applicable to the class as a whole.[3]

## II. *Interpretation of the Pickle Amendment*

The parties agree generally as to the purpose of the Pickle Amendment. Although it is an amendment to the Medicaid legislation, the Pickle Amendment involves the convergence of three different programs under the Social Security Act:

1. The Old Age, Survivors and Disability Insurance program (OASDI), 42 U.S.C. § 401 *et seq.* (Title II of the Act), often known as "Social Security," provides cash benefits to workers and their families in illness or old age. Section 215(i) of the Act, 42 U.S.C. § 415(i), provides for annual cost-of-living increases in monthly OASDI benefits.

2. The Supplemental Security Income program (SSI), 42 U.S.C. § 1381 *et seq.* (Title XVI of the Act), provides cash benefits to aged, blind, or disabled persons whose income (including any OASDI benefits they may receive) falls below a prescribed level.

3. The Medicaid program, 42 U.S.C. § 1396 *et seq.* (Title XIX of the Act), provides medical assistance to needy families and individuals.

---

1. The parties' dispute concerning the jurisdictional amount has been mooted by the recent abolition of the jurisdictional amount requirement. Act of Dec. 1, 1980, Pub.L. No. 96–486, 49 U.S.L.W. 196 (1981).

2. To the extent that there still may be a factual dispute as to details of the state defendant Pratt's method of calculating countable income under the Pickle Amendment and as to other state-imposed prerequisites to eligibility for

Medicaid under the Pickle Amendment, our ruling may be treated as one for partial summary judgment. *See* the defendant Pratt's Motion to Amend Motion for Summary Judgment (filed Dec. 1, 1980).

3. A detailed description of the class of plaintiffs is set out in note 10 and the accompanying text.

Under the Medicaid program, persons who receive both OASDI and SSI automatically qualify for medicaid benefits. 42 U.S.C. § 1396a(a)(10).[4] Persons who receive OASDI, but whose income and resources are too great to permit them to qualify for SSI, may be conditionally eligible for Medicaid. In Massachusetts, these conditionally eligible persons receive Medicaid benefits, but only after they have incurred medical expenses ("spent down") in specified amounts. *See* 42 U.S.C. § 1396a(a)(10).[5]

In some cases, individuals who were once receiving both OASDI and SSI either (1) lose their eligibility for SSI, or (2) are unable to regain their eligibility for SSI, because of cost-of-living increases in their OASDI benefits. Because they are not eligible for SSI, such persons are also not automatically eligible for Medicaid. The Pickle Amendment attempts to remedy this negative effect of cost-of-living increases by granting automatic Medicaid eligibility to certain of these persons. The dispute before us concerns exactly *which* persons must be given automatic Medicaid benefits pursuant to the amendment. The defendants claim that only persons falling into category (1) above are covered by the Pickle Amendment;[6] the plaintiffs claim that the

**4.** These persons are labeled "categorically needy" under the federal regulations, 42 C.F.R. §§ 435.4, 435.100 *et seq.*, and "categorically aided" under the Massachusetts regulations, MPAPM ch. I § F ¶ 2.a. (to be codified in 106 C.M.R. 325.030(A)). For the sake of clarity, we refer to them as automatically eligible.

**5.** These persons are labeled "medically needy" under the federal regulations, 42 C.F.R. §§ 435.-4, 435.300 *et seq.*, and "categorically related" under the Massachusetts regulations, MPAPM ch. I § F ¶ 2.b. (to be codified in 106 C.M.R. 325.030(B)). We refer to them as conditionally eligible.

The differential treatment of persons automatically eligible for Medicaid and persons conditionally eligible has been the subject of a recent ruling by this Court. *Hogan v. Harris*, 501 F.Supp. 1129 (D.Mass.1980) (Tauro, J.) (requirement of Massachusetts Medicaid program, that conditionally eligible persons spend down their income to a level substantially below the income of persons automatically eligible for Medicaid, is irrational and violates equal protection guarantees). The decision in *Hogan*, however, does not render this action moot, since persons covered by the Pickle Amendment have more income available for non-medical living expenses than persons not covered by the Pickle Amendment, who must either have a lower income or spend down to a lower income level before receiving Medicaid benefits.

**6.** This interpretation is reflected in the regulations promulgated by the defendants and challenged by the plaintiffs in this action. The federal regulation, 42 C.F.R. § 435.135 (1979), provides in pertinent part:

Individuals who become ineligible for cash assistance as a result of OASDI cost-of-living increases received after April 1977.

(a) If an agency provides medicaid to aged, blind, or disabled individuals receiving SSI or optional State supplements, it must provide medicaid to individuals who—

(1) Are receiving OASDI;

(2) Were receiving SSI or optional State supplements but become ineligible for those payments because of OASDI cost-of-living increases paid under section 215(i) of the Act after April 1977; and

(3) Would still be eligible for SSI or optional State supplements if the amount of OASDI cost-of-living increases paid after April 1977 were deducted from income.

The state regulations provide, at MPAPM ch. I § F ¶ 2.b.(4) (to be codified in 106 C.M.R. § 325.030(B)(1)d.) (Nov. 20, 1980):

b. *Categorically related*

Categorically related persons would be eligible for SSI or AFDC except that they:

. . . . .

(4) are SSI Aged or Disabled recipients who become ineligible for SSI on or after 7/1/77 because of Social Security cost-of-living increases and for no other reason. Such recipients are MA [Medical Assistance] eligible as stipulated by the Pickle Amendment to Title XIX of the Social Security Act. Continued eligibility for MA is based on the recipient not becoming ineligible for SSI for reasons other than Social Security cost-of-living increases. The Pickle Amendment does not cover any persons who would have been eligible for SSI but did not apply.

and at MPAPM ch. IV § B ¶ —— ——(1)(c) [at pp. 13–14] (to be codified in 106 C.M.R. § 338.020(C)) (Nov. 20, 1980):

*Disregard of Income Because of the Pickle Amendment*

A person who is eligible for MA according to MPAPM, Chapter I, Section F, 2.b.(4) remains eligible for MA until there is a change, other than Social Security cost-of-living increases, which would make the person ineligible for SSI. In order that a Pickle case may be handled by the MA Worker in the same way as he would handle a MA–SSI redetermination, a Pickle income disregard is used.

amendment also covers certain persons in category (2).[7]

The statute itself sheds a great deal of light on this dispute. The full text of the Pickle Amendment, Pub.L. No. 94–566, § 503, 90 Stat. 2685 (1976), codified at 42 U.S.C. § 1396a (note), is as follows:

PRESERVATION OF MEDICAID ELIGIBILITY FOR INDIVIDUALS WHO CEASE TO BE ELIGIBLE FOR SUPPLEMENTAL SECURITY INCOME BENEFITS ON ACCOUNT OF COST–OF–LIVING INCREASES IN SOCIAL SECURITY BENEFITS.

In addition to other requirements imposed by law as a condition for the approval of any State plan under title XIX of the Social Security Act [Medicaid], there is hereby imposed the requirement (and each such State plan shall be deemed to require) that medical assistance under such plan shall be provided to any individual, for any month after June 1977 for which such individual is entitled to a monthly insurance benefit under [OASDI] but is not eligible for benefits under [SSI], in like manner and subject to the same terms and conditions as are applicable under such State plan in the case of individuals who are eligible for and receiving benefits under [SSI] for such month, if for such month such individual would be (or could become) eligible for benefits under [SSI] except for amounts of income received by such individual and his spouse (if any) which are attributable to increases in the level of monthly insurance benefits payable under [OASDI] which have occurred pursuant to section 215(i) of such Act [OASDI cost-of-living increases], in the case of such individual, since the last month after April 1977 for which such individual was both eligible for (and received) benefits under [SSI] and was entitled to a monthly insurance benefit under [OASDI], and, in the case of such individual's spouse (if any), since the last such month for which such spouse was both eligible for (and received) benefits under [SSI] and was entitled to a monthly insurance benefit under [OASDI]. Solely for purposes of this section, payments of the type described in section 1616(a) of the Social Security Act or of the type described in section 212(a) of Public Law 93–66 shall be deemed to be benefits under [SSI].[8]

Except for the title, the Pickle Amendment contains no language that could be construed to limit its applicability to persons who become ineligible for SSI benefits as a result of an OASDI cost-of-living increase.[9] Rather, the statute sets out a de-

---

A Pickle income disregard is an adjustment of countable income to exclude the entire amount of Social Security cost-of-living increase which made the person ineligible for SSI and an amount which converts the SSI budget level to the MA income exemption standard.

The budget conversion on each case is done by subtracting the MA standard from the SSI budget level. [Sample calculation omitted.] Subsequent Social Security cost-of-living increases are added to the Pickle income disregard.

The Pickle disregard is subtracted after the disregards of Special and General Income. A Pickle disregard is not used when a person is receiving chronic care in a medical facility.

7. Under either interpretation, persons receive Medicaid only if their income, excluding cost-of-living increases that have occurred since the last month after April 1977 in which they received both OASDI and SSI, falls below the maximum SSI level.

8. Brackets indicate additions or changes to simplify references to sections of the Social Security Act. The last sentence merely provides that supplementary cash benefits provided by a state (under 42 U.S.C. § 1382e(a)) and income received by an "essential person" living in a recipient's home (under § 211(a) of Pub.L. No. 93–266, 42 U.S.C. § 1382 (note)) are to be treated as SSI benefits for the purposes of the Pickle Amendment.

9. The defendants point to the words "attributable to" to support their contention that only persons whose loss of SSI was "attributable to" an OASDI cost-of-living increase are protected by the statute. But the words "attributable to" in the statute do not modify the phrase "but is not eligible for benefits under [SSI]." The statute expressly applies to *"any individual"* who "is not eligible for benefits under [SSI]." No restriction is made as to the reason for becoming ineligible. The words "attributable to" are used to describe the "amounts of income" which may be disregarded under the

tailed formula to be applied each month to determine whether an individual not receiving SSI is nevertheless entitled to automatic Medicaid eligibility.

First, the individual must have been eligible for both OASDI and SSI (and receiving SSI) in some month after April 1977. In other words, in some month since April 1977 the individual must have enjoyed automatic eligibility for Medicaid.

Second, the individual must be currently ineligible for SSI, but eligible for OASDI.

Third, the individual's monthly income must be such that, but for cost-of-living increases in this OASDI benefit levels that have occurred since the last month after April 1977 when he was eligible for both OASDI and SSI (and received SSI), the individual would be eligible for SSI.[10]

The Pickle Amendment, therefore, tolerates a "gap" in automatic Medicaid eligibility. If an individual received OASDI and SSI in any month after April 1977 and lost eligibility for SSI because of an increase in income or resources *not* related to OASDI cost-of-living increases, the individual would be ineligible for automatic Medicaid benefits for that month and for any subsequent months in which his income, disregarding cost-of-living increases since his last month of SSI eligibility, remained above maximum SSI levels. This "gap" in eligibility, however, does not bar the individual from *regaining* eligibility for automatic Medicaid benefits. If the individual suffers a decrease in income, or if the maximum income levels for SSI are raised, the individual may regain eligibility under the Pickle Amendment if his monthly income, decreased by the OASDI cost-of-living increases since his last month of SSI eligibility, falls below the maximum SSI level.

In no event may a person receive automatic Medicaid under the amendment if his income from sources other than Social Security (OASDI) exceeds the SSI level. Nor may outside income ever be disregarded in calculating Medicaid eligibility. The only portions of a person's income that are disregarded are the cost-of-living increases in Social Security.

The defendants, despite the precise formula set forth in the Pickle Amendment, insist that its title and legislative history demonstrate that Congress intended to preserve automatic Medicaid eligibility only where SSI benefits are lost because of an OASDI cost-of-living increase, so that no "gap" or break in Medicaid eligibility occurs.

We note first that, as the defendants have pointed out, the starting point in statutory construction is the language of the statute itself. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1978); *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*, 545 F.2d 754, 756 (1st Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1976). The language of the Pickle Amendment is unambiguous;

---

statute. In other words, the statute permits the disregard of "amounts of income ... attributable to [OASDI cost-of-living-increases];" it does not require that loss of SSI eligibility be "attributable to [OASDI cost-of-living-increases]."

Parsing the statute even further, the use of the plural form "attributable to *increases* in the level of monthly insurance benefits payable under [OASDI]" (cost-of-living increases) makes doubly clear that the phrase refers to the amount of income to be disregarded. If the phrase did refer to the reason for loss of SSI eligibility, it would be singular, since under the defendants' formulation the statute's provisions would be triggered only when *an increase* in OASDI caused a loss of SSI.

The defendants' confusion is understandable, considering the denseness of the statute. The statutory meaning, however, is straightforward and unambiguous upon a careful reading.

**10.** In the case of a married individual, the same formula is applied to his spouse's income. All our references to the amendment's treatment of individuals may be taken to indicate similar treatment of married persons.

The plaintiffs in this case can be described simply as the class of Massachusetts residents who meet each of the three requirements above and who have been denied automatic Medicaid eligibility. We note our confusion as to the plaintiffs Vera Mamroth and Alice Gonzaga, who, according to our calculations, ought to be receiving Medicaid even under the defendants' interpretation of the Pickle Amendment.

under the plain meaning rule one would therefore look no further unless the words produced an absurd, unreasonable, or plainly unintended result. *Massachusetts Financial Services*, 545 F.2d at 756. The Pickle Amendment is not absurd, unreasonable, or unintended.

The title and legislative history support the undisputed applicability of the statute to persons losing SSI (and hence Medicaid) because of OASDI cost-of-living increases. They are silent, however, as to the statute's applicability to persons who lose SSI for other reasons. The title reads:

> Preservation of Medicaid Eligibility for Individuals Who Cease to be Eligible for Supplemental Security Income Benefits on Account of Cost-of-Living Increases in Social Security Benefits.[11]

The Senate Report states:

> Under present law, there are some cases in which a cost-of-living increase in social security benefits may result in the loss of SSI eligibility. Although the amount of SSI cash benefits in such cases is very small, the denial of medicaid benefits represents a serious loss to the individual affected. The committee bill would provide that no recipient of SSI would lose eligibility for medicaid as the result of the operation of the cost-of-living benefit increase provision under title II of the Social Security Act. The committee provision would protect the individual only against the loss of medicaid, and would be effective only in the case of future social security benefit increases.
>
> \*   \*   \*   \*   \*   \*
>
> The committee bill would protect individuals ... by providing that no recipient of Federal benefits or State supplementary payments under the SSI program would lose eligibility for medicaid as the result of the operation of the cost-of-living benefit increase provision in title II. The committee provision would thereby insure that an increase intended to bene-

fit the aged and disabled would not have inadvertent harmful effects.

S.Rep. No. 1265, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad. News 5997, 6001, 6022.

The House Conference Report states:

> The Senate amendment contained provisions designed to prevent SSI recipients from losing Medicaid eligibility because of future cost-of-living increases in social security benefits.

The Appendix to the House Conference Report states:

> Under the Senate amendment, SSI recipients would be prevented from losing Medicaid eligibility solely because of future cost-of-living increases in social security benefits.

H.Conf.Rep. No. 1745, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad. News 6032, 6042, 6047.

This legislative history provides little illumination of Congress's intent to either include or exclude persons in the plaintiffs' position. No reference is made to persons who lose SSI (and Medicaid) for reasons other than OASDI cost-of-living increases and who then are prevented from regaining eligibility because of cost-of-living increases. Nor is any express limitation described that restricts the statute to persons losing SSI because of cost-of-living increases. Taken literally, the word "solely" in the House Conference Report Appendix merely emphasizes that those losing SSI because of cost-of-living increases, had only that, single reason for losing SSI. But each of the plaintiffs also lost SSI because of a single, albeit different, increase in income. The text of the House Conference Report, which does not use the word "solely," makes the same statement as the Appendix. In each case, the legislative history is silent as to persons, such as the plaintiffs, whose loss of eligibility occurred for some reason other than cost-of-living increases.

---

11. Although the title is enacted with the statute, its import should be considered in accordance with the principles of statutory construction that the title cannot overcome the plain

words of the statute and that the specific governs the general. *See* 1A *C. Sands, Sutherland Statutory Construction* §§ 47.03, 46.05 (1973).

In contrast with the legislative history, the statutory words themselves show a clear Congressional goal to preserve the *actual or potential* Medicaid eligibility, as described above, of persons receiving both OASDI and SSI benefits in some month after April 1977. In the face of the unmistakable statutory language, the legislative history's silence concerning the plaintiffs cannot justify a judicial or administrative repeal of the Pickle Amendment insofar as it plainly includes them.

■ Since we are dealing with agency interpretations of a statute, the defendant administrators argue that their construction of the Pickle Amendment should be given substantial deference. We agree that this is true when a statute speaks in terms that are general or ambiguous, or when it gives the agency discretion to implement the statute according to the agency's expertise and judgment. *See, e. g., E.I. du Pont de Nemours & Co. v. Collins,* 432 U.S. 46, 53–55, 97 S.Ct. 2229, 2233–2235, 53 L.Ed.2d 100 (1977); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 379–81, 89 S.Ct. 1794, 1800–02, 23 L.Ed.2d 371 (1969).

■ The Pickle Amendment, however, is a classic example of a specific, mandatory directive. It reads as much like a regulation in its precise, technical prose as the rules promulgated by the defendant agencies. Additionally, it is phrased in the imperative: "there is hereby imposed the *requirement* . . . that medical assistance . . . *shall* be provided . . . ." *See* 2A *C. Sands, Sutherland Statutory Construction* § 57.03 (1973). We see no room whatsoever for agency discretion. Judicial review is accordingly well within the bounds set by the Administrative Procedures Act, 5 U.S.C. §§ 701(a)(2), 706(2)(A) and (C), and appropriate in terms of prudential considerations of deference to the Executive Branch.

The logic of the amendment's classification is underscored by the exclusion of a large group of Social Security (OASDI) recipients from its purview. Persons receiving Social Security whose income has not been low enough to qualify them for SSI in any month after April 1977, and who therefore have never enjoyed automatic Medicaid eligibility since that date, are not benefitted by the amendment. The reasoning underlying the Pickle Amendment, then, is that persons who once enjoy Medicaid are more deserving of an opportunity to continue or reestablish eligibility than are persons who have never grown accustomed to Medicaid.

■ Congress' intent was to protect *all* aged, blind, and disabled persons on Social Security, who because of their poverty become eligible for Medicaid, from the unfortunate circumstance of later finding themselves ineligible merely because of cost-of-living increases in their Social Security income. Once an aged, blind, or disabled person's income drops to the point where he qualifies for supplemental income benefits (SSI) and automatic Medicaid benefits, he is thereafter protected, no matter what temporary relief from poverty he may experience, from the specter of someday being unable to obtain Medicaid assistance solely because of intervening cost-of-living increases in Social Security.

The case of the plaintiff Mrs. C provides an illustration of how Congress meant the Pickle Amendment to operate. Mrs. C, a widow, is 67 years old and a resident of Northampton, Massachusetts. She has chronic gastrointestinal disorders that have required repeated medical attention, including an operation in February 1980 to repair her abdominal wall. Her only source of income is Social Security.

In March 1980 Mrs. C's monthly Social Security benefit was $347.40. Under Massachusetts regulations, 106 C.M.R. § 338.020(B)(1), this figure was reduced by $20.00 to arrive at a countable income of $327.40. Since her countable income was below the applicable maximum SSI level of $337.43, Mrs. C was eligible for supplemental benefits under the SSI program and thereby automatically eligible for Medicaid.

In April 1980, however, Mrs. C received a lump sum payment for past due Social Security benefits. The payment was divided over the months of April, May, and June for

SSI purposes. Thus, in each of April and May, Mrs. C's monthly Social Security benefit was $347.40, her income from the lump sum payment was $174.20, and her countable income (after the $20.00 exclusion) was $491.60. Since her countable income was above the maximum SSI level of $337.43, she lost not only her eligibility for SSI, but also her automatic Medicaid eligibility.

In June 1980 Mrs. C received a cost-of-living increase of $49.80 in her Social Security (OASDI) monthly benefit. Thus, for that month, her Social Security benefit was $397.20, her income from the lump sum payment was $174.20, and her countable income was $531.40. Again, Mrs. C was ineligible for SSI because her countable income was above the $337.43 maximum SSI level. Even disregarding the $49.80 cost-of-living increase that had occurred since March 1980 (her last month of simultaneous OASDI and SSI eligibility), her income was still above the maximum SSI level. She therefore did not qualify for automatic Medicaid eligibility under the Pickle Amendment.

In July 1980, however, Mrs. C's monthly income no longer included any part of her April 1980 lump sum payment. Her gross income, from her monthly Social Security benefit, was $397.20. After the $20.00 disregard, her countable income was $377.20. Since her countable income was greater than the maximum SSI level, raised that month to $375.22, she did not qualify for SSI payments. Under the correct interpretation of the Pickle Amendment, however, Mrs. C would qualify for automatic Medicaid since her income, excluding the $49.80 cost-of-living increase that had occurred since March 1980, was lower than the SSI maximum level. Congress did not intend that her temporary increase in income from the lump sum payment would forever disqualify her from Medicaid assistance pursuant to the Pickle Amendment.

We hold, in accordance with the above, that the defendants' construction of the Pickle Amendment is erroneous. The amendment is susceptible of only one interpretation: Medicaid benefits equivalent to those received by SSI recipients must be given to all OASDI recipients who were eligible for both OASDI and SSI (and who received SSI) in any month after April 1977, and who would be eligible to receive SSI if their income were reduced by an amount equal to the cost-of-living increases in their OASDI benefit levels that have occurred since that month.

Having so concluded, we need not reach the plaintiffs' equal protection claims. We deal briefly, however, with several procedural issues raised by the state defendant.

### III. *The Eleventh Amendment*

The state defendant Pratt correctly points out that the eleventh amendment, as construed by the Supreme Court in *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974), bars a federal court from awarding retroactive monetary relief against a state official, where the award is likely to be satisfied from the state treasury. The plaintiffs, however, have demanded only prospective injunctive and declaratory relief. To the extent that such relief may require *future* expenditures by the state, the award would be entirely within the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Edelman v. Jordan*, 415 U.S. at 664–68, 94 S.Ct. at 1356–59, and cases cited therein.[12]

### IV. *Standing*

Each of the named plaintiffs and each member of the class has been refused

---

12. We do not dismiss the claim against the state defendant Pratt in his individual capacity. It is true that the absence of bad faith and malice is a defense in an action for damages against a state official protected by the doctrine of qualified immunity. The burden of pleading and proving this affirmative defense, however, is on the defendant. *See Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Slotnick v. Garfinkle*, 632 F.2d 163 n. 2 (1st Cir. 1980). Moreover, the relief requested by the plaintiffs is primarily injunctive and declaratory.

Medicaid assistance.[13] Each plaintiff falls within the Pickle Amendment's description of a person who must be provided with Medicaid. Additionally, each plaintiff is among the persons whose potential Medicaid eligibility has been preserved, in that a portion of their income must be disregarded in the future. The plaintiffs, therefore, are peculiarly suited to bringing this action; their injury from the challenged conduct of the defendants is palpable and direct. The state defendant's contention that the plaintiffs do not meet the standing requirements as set out in *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), is without merit.

V. *Conclusion*

For all of the foregoing reasons, we find that the plaintiffs have demonstrated that they are entitled to summary judgment. The plaintiffs' motion for summary judgment is accordingly granted, and the defendants' motions for summary judgment are denied.

So ordered.

13. The named plaintiffs Vera Mamroth and Alice Gonzaga allege they are being refused Medicaid benefits. Their loss of SSI benefits was, however, due to OASDI cost-of-living increases. Both meet all the criteria that the defendants represent they apply in determining Medicaid eligibility. If either has been made eligible since the pleadings were filed, she is of course without an immediate claim.