**Raymon and Joann LYNCH, et al., Plaintiffs,**

v.

**Peter RANK, Director of the Department of Health Services of the State of California, et al., Defendants.**

**Peter RANK, Director of the State Department of Health Services, et al., Defendants and Third Party Plaintiffs,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, et al., Third Party Defendants.**

**No. C–83–2340 WHO.**

United States District Court, N.D. California.

March 9, 1984.

Daniel Brzovic, Bet Tzedek Legal Services, Los Angeles, Cal., Evelyn R. Frank, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiffs.

John K. Van De Kamp, Atty. Gen., Charlton G. Holland, Catherine M. Van Aken, Deputy Attys. Gen., San Francisco, Cal., for defendant Rank.

Joseph Russoniello, U.S. Atty., John F. Barg, Asst. U.S. Atty., Northern Dist. of Cal., San Francisco, Cal., for third party defendant Heckler.

## OPINION AND ORDER

ORRICK, District Judge.

The Pickle Amendment to the Social Security Act, 42 U.S.C. § 1396a(note), was designed "to insure that an increase intended to benefit the aged and disabled would not have inadvertent harmful effects." S.Rep. No. 94–1265, 94th Cong., 2d Sess. 28 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5997, 6022. Congress intended the Amendment to nullify the detrimental effect of social security cost-of-living increases on certain recipients' eligibility for Medicaid benefits; such increases raised the recipient's countable income level beyond the qualifying limit for Supplemental Security Income ("SSI") payments. Loss of SSI eligibility, in turn, caused such an individual to lose his or her qualification for Medicaid. This loss of Medicaid eligibility is a far greater financial burden than the small cost-of-living increase can offset.

Plaintiffs, a class of California residents, charge that the Director of the Department of Health Services of the State of California (the "State") and the Secretary of Health and Human Services (the "Secretary") have incorrectly applied the Amendment by invoking it only when it appears that a recipient lost his or her right to SSI "solely" because of a social security cost-of-living increase. Plaintiffs take the position that the Pickle Amendment applies a "but for" test, that is, if one would still be entitled to SSI benefits *but for* the Social Security cost-of-living increase, then one would qualify under the Amendment for continued Medicaid benefits. Plaintiffs thus seek a judgment compelling the State and the Secretary to adopt the "but for"

test. Plaintiffs also seek certification of a nationwide class of plaintiffs and a mandatory injunction against the Secretary. For the reasons set forth below, the Court finds for the plaintiffs.

## I

### A

This case involves the interaction of three federal programs, the SSI program, 42 U.S.C. § 1381 *et seq.*, the Old Age Survivors and Disability Income Program ("OASDI" or "Social Security"), 42 U.S.C. § 401 *et seq.*, and Medicaid, 42 U.S.C. § 1396 *et seq.* SSI aids the aged, blind, and disabled poor by paying each covered person enough money to bring his or her income up to a federally-established minimum level. That minimum income may be set at a higher level if an individual state is willing to pay additional cost. *See* 42 U.S.C. § 1382e.[1]

OASDI payments, commonly known as "social security," are primarily an insurance program. The size of payments to retired workers or their survivors depends in part on how much the worker and his or her employer have contributed to the system. Annual cost-of-living increases are made to recipients. *See* 42 U.S.C. § 415(i).

Finally, Medicaid is a federal program that reimburses states for providing medical care to those who cannot afford it.[2] If a person is qualified for and receives SSI, he or she is denominated a "categorically needy" person and is, in a majority of states,[3] automatically entitled to Medicaid, with no cost to the recipient. 42 U.S.C. § 1396a(a)(10). Those poor who do not re-

---

**1.** Under Title XVI of the Social Security Act, states may supplement SSI benefits with state supplementary payments ("SSP"). California has chosen to do so; therefore, welfare benefits paid to aged, blind, and disabled persons under Title XVI in California are referred to as "SSI/SSP." Such state supplementary payments are excluded from the determination of the recipient's income qualification for SSI. *See* 42 U.S.C. § 1382e.

**2.** The interaction of the state and federal governments in the administration and financ-

ing of the Medicaid program is described generally in *Norman v. St. Clair,* 610 F.2d 1228, 1230–31 (5th Cir.1980).

**3.** This automatic entitlement to Medicaid for SSI recipients is the rule in all but fourteen states. States that have elected the "209(b)" option may set Medicaid eligibility limits according to the eligibility limit established by the individual state in 1972, before the enactment of the SSI statute. *See* discussion of the 209(b) option in Section II A.

ceive SSI still receive Medicaid payments in some states, including California, but only after they have paid out each month enough of their own funds for medical expenses to bring their remaining income below the SSI qualification limit. This group of persons who must pay a share of their medical costs before receiving Medicaid are denominated "medically needy" recipients; the requirement that they spend a certain amount of their own income for medical needs is called a "spend down" or a "share of cost" provision.

Some SSI recipients also receive OASDI, or social security benefits, albeit in amounts low enough that they continue to meet the income eligibility criteria for the SSI program. As OASDI recipients, they receive an annual social security cost-of-living increase. The annual increase may raise the recipient's income above the SSI limit, disqualifying him or her from further SSI benefits.

Before enactment of the Pickle Amendment, an SSI recipient who became ineligible for SSI benefits also lost his or her categorically needy Medicaid benefits. In states that do not provide Medicaid to the medically needy, the consequence was total ineligibility for medical assistance. In states participating in the medically needy program, the recipient could continue to obtain medical assistance, but only after meeting a monthly "spend down" or "share of cost" requirement.

The social security cost-of-living increases were, therefore, producing drastic consequences. The slight advantage of higher social security benefits was far outweighed by the loss of Medicaid coverage. In response, Congress enacted the Pickle Amendment to

"protect individuals * * * by providing that no recipient of Federal benefits or State supplementary payments under the SSI program would lose eligibility for medicaid as the result of the operation of the cost-of-living benefit increase provision in Title II [OASDI]. The purpose of the Amendment is to insure that an increase intended to benefit the aged and disabled would not have inadvertent harmful effects."

S.Rep. No. 94–1265, 94th Cong., 2d Sess. 28 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 6022.

The Pickle Amendment achieves this goal by excluding social security cost-of-living increases from countable income in the determination of Medicaid eligibility. For example, if the federally-established monthly income level for SSI were $500, an individual with a monthly OASDI income of $490 and no other income would receive $10 in SSI and would be automatically entitled to Medicaid because he or she was categorically needy. If that individual then received a $20 cost-of-living increase in OASDI benefits,[4] he or she would no longer qualify for SSI because his or her income would now be over the $500 limit. The Pickle Amendment, however, would require that the cost-of-living increase not be included in the determination of Medicaid eligibility; thus, a qualified individual would continue to receive Medicaid as if he or she were still an SSI recipient.

The Secretary, however, has interpreted the Pickle Amendment in a restrictive manner. Using what is referred to as the "solely" test, the Secretary decreed that OASDI cost-of-living increases would be excluded in calculating Medicaid eligibility only when such increases were the sole cause of the loss of SSI eligibility. The

---

**4.** *Ciampa v. Secretary of Health and Human Services,* 687 F.2d 518, 521 (1st Cir.1982):

"[B]oth the OASDI and SSI payment levels rise each year to take account of inflation. The OASDI payment (which is wholly federal) and the *federal* component of the SSI 'minimum' rise by exactly the same percentage. 42 U.S.C. §§ 415(i), 1382f. * * *

\* \* \* \* \* \*

How was it possible for a OASDI increase to result in a loss of SSI? One explanation lies in the fact that the state components of SSI were not indexed to inflation as were the federal component and OASDI. Thus, while the *federal part* of SSI was required to rise as rapidly as OASDI, the *state part* was not. An OASDI increase could therefore raise a recipient's outside income above the less rapidly rising SSI 'minimum' in his state."

"solely" test is codified at 42 C.F.R. § 435.-135 (1981). Those persons whose loss of SSI eligibility was triggered by some other increase in income, but who would, nevertheless, remain eligible for SSI but for the OASDI cost-of-living increase, do not receive Medicaid assistance as categorically needy persons under the Secretary's interpretation of the Pickle Amendment.[5]

Intended beneficiaries of the Amendment challenged this restrictive interpretation in Massachusetts, naming the Secretary and the Massachusetts Commissioner of Public Welfare as defendants. The district court certified a statewide class of plaintiffs and agreed that the "solely" test did not reflect the intent of Congress or the language of the statute. *Ciampa v. Schweiker*, 511 F.Supp. 670 (D.Mass.1981). On appeal, the First Circuit affirmed, *sub nom. Ciampa v. Secretary of Health and Human Services*, 687 F.2d 518 (1st Cir.1982). Relying on the unambiguous language of the statute itself, the court unanimously concluded: "The relevant words * * * are 'except for.' These words suggest a mechanical 'but for' test; they do not suggest the type of 'causal' requirement that the government has imported into its regulations." *Id.* at 524.

The Secretary followed the *Ciampa* court's directive in Massachusetts, but continued to enforce its regulation requiring the "solely" test in all other states. Plaintiffs then filed this action in San Francisco Superior Court, challenging California's use of the "solely" test, as well as other aspects of the Pickle Amendment not at issue in this motion. The State removed the case to this Court and named the Secretary as a third-party defendant. Plaintiffs[6] filed an amended complaint, naming the Secretary as a defendant and seeking relief on behalf of a nationwide class of those persons to whom the "solely" test denies Medicaid eligibility.

**B**

The problem caused by OASDI cost-of-living increases is best illustrated by surveying the plight of several members of the plaintiff class. Raymon Lynch, 52 years old, is disabled due to two ruptured disks, high blood pressure, and a nervous condition. He receives social security benefits of $563 per month. His wife, plaintiff Joann Lynch, is also disabled and receives OASDI monthly benefits of $239. Their combined benefits support a family of four, which includes their sixteen year old daughter, and their eleven year old granddaughter. Until July 1977, Raymon Lynch also received SSI and, accordingly, received Medicaid without a share of cost. In October 1982, the Lynches were notified by the State (which was applying the solely test for Pickle eligibility) that they would in the future have to pay a monthly share of their medical bills in order to receive further Medicaid payments.[7]

---

**5.** Such persons may continue to receive Medicaid as "medically needy" persons after spending enough of their income on medical expenses to bring their income level below the SSI limit. *See* discussion of the medically needy program in Section I A.

**6.** The parties stipulated to certification of a statewide plaintiff class, defined as California residents meeting all of the following criteria:
All California residents who:
(a) at some time since April 1977, contemporaneously received both monthly Title II (OASDI) social security benefits and SSI/SSP benefits; and
(b) are no longer receiving SSI/SSP benefits; but are currently entitled to Title II benefits; and
(c) have received, or will receive, Title II cost-of-living increases since the last month of contemporaneous eligibility for both SSI/SSP and Title II benefits;
(d) would be eligible for SSI benefits if the amount of their income attributable to the increases referred to in subparagraph (c) were disregarded; and
(e) have not received, or will not receive, Medi-Cal benefits without a share of cost.

**7.** *See* declaration of Raymon Lynch, filed May 23, 1983. The representatives of the California plaintiff class filed detailed declarations describing their eligibility histories. They also filed charts showing how their eligibility for Medicaid would be calculated under the "but for" test. *See* Appendix I in support of plaintiffs' motion for preliminary injunction, filed May 23, 1983. A portion of that Appendix is summarized below.

Plaintiff Ellen Beezy, who is 32 years old, is paralyzed on her right side. She began receiving social security disability benefits in 1978, at which time she also qualified for and received SSI payments. Her SSI benefits ended in February 1979, as a result of which she was forced to pay a share of cost before receiving Medicaid. In 1979 that share was $36 per month; in 1980 it was $49 per month; it continued to increase to $86 per month in 1981, and $194 per month in 1982. Her current monthly social security benefits amount to $545. Ms. Beezy would still be eligible for SSI if OASDI cost-of-living increases were not counted in her income. Under the "but for" interpretation of the Pickle Amendment, therefore, she would not have to pay a share of cost before receiving Medicaid benefits.[8]

### C

This Court entered a preliminary injunction against the State and the Secretary, which, *inter alia*, enjoined the State from applying the "solely" test in California. The order also required the Secretary to provide full federal participation in Medicaid payments made pursuant to the Court's order. Plaintiffs now ask that the preliminary injunction be made permanent. Plaintiffs also move for certification of a nationwide class, consisting of all persons, except residents of Massachusetts, who would be eligible for Medicaid benefits under the Pickle Amendment if implemented in accordance with the *Ciampa* decision. This motion seeks to extend relief to members of the proposed nationwide class who are still subject to the "solely" test only because they live elsewhere than in Massachusetts or California.

### II

### A

■ Plaintiffs propose certification of the following nationwide plaintiff class:

"A class of persons, residing in the United States, except for persons residing in Massachusetts, who:

(a) at some time since April 1977 contemporaneously were eligible for (and received) both monthly Title II (OASDI) social security benefits and SSI or SSI/SSP benefits; and

(b) are no longer receiving SSI or SSI/SSP benefits, but are currently entitled to Title II benefits; and

(c) have received Title II cost-of-living increases since the last month of contemporaneous eligibility for both SSI or SSI/SSP and Title II benefits; and

(d) would be eligible for SSI benefits if the amount of their income attributable to such increases and to such increases

---

Calculations Showing Plaintiffs'
Eligibility for Medicaid Under
the Pickle Amendment

Plaintiffs Raymon and Joann Lynch:

| | |
|---|---|
| $563.00 | Title II benefits of Raymon Lynch |
| −230.25 | Title II increases (7/77–7/82) |
| $332.75 | Countable Title II benefit |

| | |
|---|---|
| $239.00 | Title II benefit of Joann Lynch |
| −137.00 | Title II increases since July 1977 |
| $102.00 | Countable Title II benefit |

| | |
|---|---|
| $102.00 | |
| +333.00 | |
| 435.00 | Net Income |
| − 20.00 | Any income deduction (20 C.F.R. § 416.1124(c)(10)) |
| $415.00 | Net Countable Income |

| | |
|---|---|
| $451.00 | SSI/SSP Maximum Grant |
| −415.00 | |
| $ 36.00 | SSI/SSP Grant, but for Title II Income |

8. *See* declaration of Ellen Beezy, filed May 23, 1983. Ms. Beezy's eligibility for Medicaid under the Pickle Amendment would be calculated as follows:

| | |
|---|---|
| $545.00 | Title II benefit |
| −182.00 | Title II increases (7/79–7/82) |
| $363.00 | Countable Title II Income |
| − 20.00 | |
| $343.00 | Countable Income |

| | |
|---|---|
| $451.00 | SSI/SSP Maximum Grant |
| −343.00 | Countable Income |
| $108.00 | SSI/SSP Grant, but for Title II increases |

*See* Appendix I in support of plaintiffs' motion for preliminary injunction, filed May 23, 1983, at 4.

received by their spouses, if any, referred to in paragraph (c) were disregarded, and

> (e) have not received, or will not receive Medicaid benefits."

In short, the class consists of those persons who are eligible for Medicaid under the "but for" view of the Amendment.

██ The proposed class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). Rule 23(a) imposes four preliminary requirements for class certification. First, the proposed class must be so numerous that joinder of all members is impracticable. This nationwide class consists of all persons who have lost Medicaid eligibility because of an increase in income, but not as the sole result of an OASDI cost-of-living increase. Plaintiffs have presented evidence of the numbers of persons falling into this category in California.[9] The fact that the number of persons in the class cannot be exactly determined does not preclude class certification, *see, e.g., Stenson v. Blum,* 476 F.Supp. 1331, 1335 (S.D.N.Y.1979), *aff'd without opinion,* 628 F.2d 1345 (2d Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980); a court may draw a reasonable inference of class size from the facts before it. *Westcott v. Califano,* 460 F.Supp. 737, 744 (D.Mass.1978), *aff'd,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979). It is clear that the number of affected persons nationwide must be substantial.

Further, joinder of all plaintiffs is not feasible because of geographic factors, and because members of the class, who are by definition poor and disabled, do not have the economic means to pursue remedies on an individual basis. *See, e.g., Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *see generally McClure*

*v. Harris,* 503 F.Supp. 409, 413 (N.D.Cal. 1980).

The second prong of the Rule 23(a) test for class certification is whether the class is united by common questions of law or fact. Fed.R.Civ.P. 23(a)(2). The single issue for decision in this motion is whether the Pickle Amendment is to be applied using a "but for" or a "solely" test. That issue of interpretation is clearly a legal question common to the members of the proposed class, although the actual entitlement to benefits of class members in different states may differ.

The class also meets the third requirement of Rule 23(a) because the claims of the class representatives are typical of the claims of the class. Fed.R.Civ.P. 23(a)(3). "The typicality requirement is designed to assure that the named representative's interests are aligned with those of the class." *Jordan, supra,* 669 F.2d at 1321. Defendants do not suggest that the named representatives are inadequate, but argue that because some states have adopted different standards for implementing Medicaid programs, the named representatives' claims are not typical. This argument is based on the existence of the so-called "209(b) option" in several states.

Before Congress enacted SSI in 1972, with its automatic grant of Medicaid benefits to SSI recipients, the states individually set income-eligibility limits for Medicaid, typically at much lower income levels than under the SSI program. To dissuade states that were unwilling to assume or unable to afford the costs of providing Medicaid to a larger recipient pool from leaving this voluntary program, Congress established the 209(b) option, which essentially allows a state to set Medicaid eligibility at the levels it used before the implementation of SSI in 1972. Pub.L. No. 92–603 § 209(b), codified at 42 U.S.C.

---

**9.** Plaintiffs produced evidence that in California approximately 5,980 people lost SSI benefits in September 1978, as a result of a decrease in the State's contribution to the SSI/SSP grant level; another 4,592 people lost SSI benefits in January 1981 after a similar State decrease. *See* supplemental declaration of Frank, July 1, 1983, ¶ 6 A, B. These people became ineligible for SSI for a reason other than an OASDI cost-of-living increase, and so under the solely test were not protected by the Pickle Amendment. While these statistics reflect events in California only, they do indicate the numbers of persons potentially affected by the Secretary's interpretation of the Amendment.

§ 1396a(f). Thus, a recipient of SSI who would automatically receive Medicaid in California and the majority of states might not qualify for Medicaid automatically in a 209(b) state. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 39, 101 S.Ct. 2633, 2638, 69 L.Ed.2d 460 (1981). Such a person would not be absolutely precluded from receiving Medicaid, however, because 209(b) states must

> "incorporate a *'spend down'* provision. This allows those individuals who would be eligible under the SSI standards to deduct their incurred medical expenses from their income. This spend-down [enables] * * * needy individuals to become eligible for Medicaid when that part of their incomes in excess of the 1972 standards is consumed by the expenses for medical needs. Pub.L. No. 92–603 § 209(b); 42 U.S.C. § 1396a(f)."

*Norman v. St. Clair,* 610 F.2d 1228, 1232 (5th Cir.1980). Defendants argue that the claims of class members in 209(b) states differ from those in states like California, because an individual's actual entitlement to benefits will depend on whether the state has adopted the 209(b) option.

This argument is unpersuasive. The Pickle Amendment does not command the payment of Medicaid benefits to any particular person; it only requires that people who meet the Amendment's definition be treated in the same manner as SSI recipients for the purposes of determining their Medicaid eligibility. This conclusion is buttressed by the Department of Health and Human Services own regulations, which require that 209(b) states consider as categorically needy not only SSI recipients, but also Pickle-eligible persons. 42 C.F.R. § 435.330 (1981). Thus, in a 209(b) state, the Pickle-eligible person, like the SSI recipient, is not automatically eligible for Medicaid; instead, both categories of per-

sons may receive Medicaid after complying with the state's "spend down" provision. It is clear that in all states the issue affecting class members is the same: should the Amendment be implemented using the "but for" or the "solely" test. The claims of class representatives, though not their ultimate entitlements, are typical of the class.

■ The final prong of the Rule 23(a) test looks to whether the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement is satisfied by demonstrating that the named plaintiffs' attorneys are "qualified, experienced, and generally capable to conduct the litigation and that the named representative's interests [are] not * * * antagonistic to the interests of the class." *Jordan, supra,* 669 F.2d at 1323. It was demonstrated above that all class members share a common interest in what test is used to implement the Amendment. No class member's position is antagonistic to another's. Plaintiffs' counsel, moreover, are experienced in class action litigation and in Medicaid law.[10]

To be maintained as a class action, the litigation must also fall within one of the categories described in subsection (b) of Rule 23. This action is clearly maintainable under 23(b)(2), which describes actions wherein:

> "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

As demonstrated above, the Secretary's implementation of the Pickle Amendment applies to the class as a whole; hence, final injunctive relief will be appropriate to remedy the injuries to the class.

---

**10.** Plaintiffs' counsel have acted as lead or co-counsel, for example, in *Beltran v. Myers,* 451 U.S. 625, 101 S.Ct. 1961, 68 L.Ed.2d 495 (1981), on remand, 701 F.2d 91 (9th Cir.1982), *cert. denied sub nom. Rank v. Beltran,* 462 U.S. 1134, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983) (statewide class action challenging state Medicaid rule as violative of federal law); *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981) (challenge by nationwide organizations seeking to invalidate federal regulations alleged to violate the Medicaid statute); *Shannon v. United States Civil Service Commission,* 444 F.Supp. 354 (N.D.Cal.1977), *modified,* 621 F.2d 1030 (9th Cir.1980). Defendants have not challenged the adequacy of representation of the class by the class attorneys.

## B

Finally, the Secretary argues that policy factors weigh against certification of the nationwide class. The Supreme Court has commented on the policies underlying nationwide class action litigation in *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In that case, the court below had certified a nationwide class of plaintiffs who were OASDI recipients and whose benefits had been or would in the future be reduced without prior notice or an opportunity for a hearing. *Id.* at 689, 99 S.Ct. at 2551. The Secretary argued to the Supreme Court that such a nationwide class would foreclose "reasoned consideration of the same issues by other federal courts and artificially increase[ ] the pressure on the docket of this Court by endowing with national importance issues that, if adjudicated in a narrower context, might not require * * * [the Supreme Court's] immediate attention." *Id.* at 701-02, 99 S.Ct. at 2557-58.

The Court agreed in principle with the Secretary's argument and noted that in some circumstances it would be preferable to allow several courts to pass upon class claims.[11] The Court also found, however, that Rule 23 does not limit the geographic scope of class actions and that a nationwide class could certainly be consistent with "principles of equity jurisprudence." *Id.* at 702, 99 S.Ct. at 2558. From this reasoning the Court found:

"[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts. But we decline to adopt the extreme position that such a class may never be certified. The certification of a nationwide class * * * is committed in the first in-

stance to the discretion of the district court. On the facts of this case we cannot conclude that the District Court * * * abused that discretion, especially in light of its sensitivity to ongoing litigation of the same issue in other districts, and the determination that counsel was adequate to represent the class."

*Id.* at 702-703, 99 S.Ct. at 2558-59.

Certification of a nationwide class to challenge the Secretary's implementation of the Pickle Amendment is particularly appropriate under the standards and policies enunciated in *Califano v. Yamasaki*. Although judgment in favor of this class will foreclose litigation of the issue in other districts and circuits, this issue has previously been fully litigated and appealed in the First Circuit. Further, this Court's issuance of a preliminary injunction in favor of the statewide class is already on appeal to the Ninth Circuit. Therefore, should the case eventually be presented to the Supreme Court, that Court will have the benefit of two circuit opinions on this fairly complex legal issue.

Equity also favors certification of the class. The plaintiffs in this action are by definition poor and disabled. They are represented by several public interest law groups that are consuming considerable amounts of their limited resources to litigate this case. If this Court issued a judgment in favor of California plaintiffs only, it seems quite likely that the Secretary will do as she did in Massachusetts and limit the effect of that judgment to this state; therefore, other plaintiffs and public interest groups in other forums will be forced to throw their efforts and resources into relitigating the issue. This is not an efficient use of the courts, nor is it equitable to pit plaintiffs against the far greater resources of the federal government in a state-by-state battle over implementation of the Amendment. Under these circumstances,

---

**11.** The Supreme Court has recently reaffirmed this policy in *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). The Court held that nonmutual collateral estoppel does not apply against the government, reasoning in part that such a bar to the relitigation of legal issues "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Id.* 464 U.S. at ——, 104 S.Ct. at 572.

this Court finds that it is appropriate to certify the proposed nationwide class.

## III

The parties agree that there are no issues of material fact for decision and that the question before the Court is purely one of statutory interpretation. Therefore, summary judgment is appropriate at this time. Fed.R.Civ.P. 56.

In granting the California plaintiffs' earlier motion for a preliminary injunction, this Court adopted the persuasive reasoning of *Ciampa, supra.* The *Ciampa* court described the Pickle Amendment by virtue of its three basic features:

"1) It applies to persons who were eligible for (and received) SSI, and who were entitled to receive OASDI, during some month after April 1977; 2) It provides these persons with the Medicaid benefits that an SSI beneficiary would receive, but it does not provide any other SSI benefits; 3) It provides these benefits for 'any month after June 1977' as to which 'such individual would be (or could become) eligible' for SSI benefits *'except for* amounts of income * * * attributable to increases' in OASDI (which increases have occurred since the most recent month satisfying the first condition above)."

*Id.,* 687 F.2d at 523. The *Ciampa* court then rejected the government's advocacy of the "solely" test because the statute's clear language establishes a "but for" test.

■ The key language in the statute is the phrase "except for," which is used to explain that OASDI cost-of-living increases will be excluded from the calculation of Medicaid eligibility. The *Ciampa* court found the "except for" language to mean that the statute requires only "but for" causation. These words simply indicate that a person is to be treated like an SSI recipient if he or she would remain eligible for SSI if the OASDI cost-of-living increase were ignored in counting his or her income. The court found that "[w]here a statute's scope is narrow, its language precise, and its application foreseeably mechanical, it

would take a strong showing of 'rare and exceptional circumstances' to convince us that it should not be applied as written." *Id.* at 524, *quoting Howe v. Smith,* 452 U.S. 473, 483, 101 S.Ct. 2468, 2475, 69 L.Ed.2d 171 (1981).

Neither the Secretary nor the State has advanced before this Court any argument in support of the "solely" test that was not considered by the First Circuit. The language of the statute, convoluted though it is, clearly provides that eligibility is to be tested simply by disregarding OASDI cost-of-living increases; the statute says nothing about taking into account whether SSI has been lost solely as a result of such an increase. This Court, therefore, grants partial summary judgment on behalf of the plaintiff nationwide class.

■ The Secretary argues that granting the relief plaintiffs request on behalf of a nationwide class will subject this Court to the burden of determining how *each* state should implement the "but for" test within its own welfare system. Although the Court would indeed be reluctant to face such an Augean task, it is not required by this case. In interpreting the statute, the Court addresses only the statute and the regulations promulgated by the Secretary pursuant to it. If a class member in a state outside California objects to his or her state's implementation of new and correct federal regulations, that matter is for adjudication in the courts of that person's state, not here. The only determinations made by this Court are, first, that the Pickle Amendment must be applied using a "but for" test; second, that the Secretary must refrain from using the "solely" test, and must correct all appropriate federal regulations in accordance with this interpretation; and third, that the Secretary must notify each state of the proper interpretation of the Amendment and of the new regulations.

## IV

Accordingly,

IT IS HEREBY ORDERED that:

1. The proposed nationwide class of plaintiffs, described in Section II A above, is certified under Rule 23(a) and (b)(2).

2. Partial summary judgment is granted on behalf of this class on their claim that the Pickle Amendment requires the use of a "but for" test.

3. The language and intent of the Pickle Amendment requires states participating in the Medicaid program to provide Medicaid benefits to persons eligible under the Amendment in the same manner that such benefits are provided to SSI recipients.

4. The regulation set forth in 42 C.F.R. § 435.135 is void and of no effect to the extent that it permits or requires states to deny Medicaid benefits under the Pickle Amendment to class members on the ground that they did not become ineligible for SSI as a direct result of, or "solely" because of, an OASDI cost-of-living increase.

5. Defendant Secretary, together with her agents, employees, and representatives, their successors in interest, and all persons acting in concert or participating with them, are hereby perpetually enjoined and restrained from permitting or requiring any state to deny Medicaid benefits to persons otherwise entitled thereto under the Pickle Amendment, on the basis of the "solely" test presently codified at 42 C.F.R. § 435.135.

6. The State of California is hereby perpetually enjoined and restrained from using the "solely" test, and from failing or refusing to provide Medicaid benefits to the members of the California class, certified by this Court's order of July 12, 1983.

7. Within thirty days of the filing of this Opinion and Order, defendant Secretary shall file and serve a plan, stating how she intends to notify those states participating in the Medicaid program of the terms of this Order. In the event that plaintiffs have any objections to said plan, the parties shall forthwith meet and attempt to resolve these objections. Plaintiffs may seek relief from this Court with respect to said plan upon properly noticed motion.