545 F.2d 754
 Fed. Sec. L. Rep. P 95,781
MASSACHUSETTS FINANCIAL SERVICES, INC., Plaintiff, Appellee,
v.
SECURITIES INVESTOR PROTECTION CORPORATION, Defendant, Appellant.
 No. 76-1256.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 9, 1976.
Decided Dec. 1, 1976.
 
 Theodore H. Focht, Washington, D. C., with whom Wilfred R. Caron and William H. Seckinger, Washington, D. C., were on brief, for defendant, appellant.
 Daniel B. Bickford, Boston, Mass., with whom Gerard A. Corsini and Gaston, Snow & Ely Bartlett, Boston, Mass., were on brief, for plaintiff, appellee.
 Before COFFIN, Chief Judge, CLARK,* Associate Justice, U. S. Supreme Court (Ret.), McENTEE, Circuit Judge.
 McENTEE, Circuit Judge.
 
 
 1
 The single discrete question with which this appeal deals is whether appellee, Massachusetts Financial Services, Inc. ("MFS"), is a member of the federally created Securities Investor Protection Corp. ("SIPC").[1] The district court answered this question in the negative and held that MFS was not liable for the $5,368 which it had paid to SIPC as a mandatory assessment for the calendar years 1972 and 1973. 411 F.Supp. 411 (1976). We affirm.
 
 
 2
 The crucial statute in this case is P 3(a)(2) of the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78ccc(a)(2), which provides that SIPC shall:
 
 
 3
 "be a membership corporation the members of which shall be
 
 
 4
 (A) all persons registered as brokers or dealers under section 78o (b) of this title (the Securities Exchange Act of 1934), and
 
 
 5
 (B) all persons who are members of a national securities exchange,
 
 
 6
 other than persons whose business as a broker or dealer consists exclusively of (i) the distribution of shares of registered open end investment companies or unit investment trusts, (ii) the sale of variable annuities, (iii) the business of insurance, or (iv) the business of rendering investment advisory services to one or more registered investment companies or insurance company separate accounts . . . ." (Emphasis added.)[2]
 
 
 7
 MFS contends that § 78ccc(a)(2) specifically exempts it from membership in SIPC because the only business which it conducts as a broker or dealer is the marketing (distribution) of the shares of its mutual fund customers. The Sales Division of MFS markets the shares of the firm's mutual fund customers, while other MFS divisions perform other functions. See 411 F.Supp. at 414-15 & n. 5. Some of these other functions are beyond the pale of the four exceptions specified in § 78ccc(a)(2). It is critical to note, however, that none of the other functions performed by MFS require broker-dealer registration. In essence MFS contends that its only activity as a broker or dealer is one which is specifically exempted by § 78ccc(a)(2) and that the other activities conducted by the firm in a non-broker-dealer capacity are irrelevant to the question of its membership vel non in SIPC.
 
 
 8
 SIPC for its part does not deny that the exclusive activity of the Sales Division is the distribution of the shares of the firm's mutual fund customers. It argues, however, that once MFS registered as a broker-dealer (as it was required to do by the 1934 Act so that the Sales Division could conduct its business), it became a member of SIPC by virtue of its other activities which are not included among the specific statutory exceptions and therefore can be assessed, pro tanto, for those nonexcepted activities. To use the term employed by SIPC in its brief, MFS's registration as a broker-dealer conferred upon it the status of "member" in SIPC, see § 78ccc(a)(2)(A), and it can divest itself of that status only to the extent that it is involved in one or more of the four exempted activities (which SIPC characterizes as categories of exempt revenue).
 
 
 9
 For SIPC to prevail, however, it must overcome the significant hurdle that the plain language of the statute specifically exempts "persons whose business as a broker or dealer consists exclusively of . . . the distribution of (mutual fund) shares." SIPC vigorously argues that the quoted phrase should not be given a technical meaning, but should be understood as exempting only those parties whose securities business (in the broad sense) consists exclusively of one or more of the exempted activities. MFS argues that the expression "as a broker or dealer" means precisely what it says and that since the only activity which it conducts pursuant to its broker-dealer registration is unquestionably exempted, it therefore is not a member of SIPC.
 
 
 10
 A basic principle which must guide our approach to the instant case is that a statute's plain language is the primary indicator of its meaning:
 
 
 11
 "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).
 
 
 12
 See also Flora v. United States, 357 U.S. 63, 65, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1968); United States v. Second National Bank, 502 F.2d 535, 539-40 (5th Cir. 1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); Busse v. Commissioner of Internal Revenue, 479 F.2d 1147, 1150-51 (7th Cir. 1973); United States v. New England Coal & Coke Co., 318 F.2d 138, 142-43 (1st Cir. 1963). Of course, deference to the plain meaning rule should not be unthinking or blind. We would go beyond the plain meaning of statutory language when adherence to it would produce an absurd result or "an unreasonable one 'plainly at variance with the policy of the legislation as a whole.' " United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940), quoting Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922). See also Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965); Organized Migrants in Community Action, Inc. v. Brennan, 172 U.S.App.D.C. 147, 520 F.2d 1161, 1166-67 (1975); Chappell & Co. v. Frankel, 367 F.2d 197, 202 (2d Cir. 1966) (en banc). See generally United States v. Second National Bank, supra at 540-41; H. Hart & A. Sacks, The Legal Process 1144-1417 (tentative ed. 1958).
 
 
 13
 In the present case, we believe not only that the language of § 78ccc(a)(2) is clear but also that it produces a result which is neither absurd, unreasonable, nor at variance with the policy of SIPA. While Congress could have chosen to be less generous with its exemptions in establishing SIPC's assessment powers, the statute as enacted does contain the exemptions referred to above. And we cannot say that these exemptions as drafted are absurd or unreasonable on their face or as applied, nor that their presence in the act is necessarily incompatible with the overall scheme of SIPA. Accordingly, we agree with the district court that the words "whose business as a broker or dealer" are to be given their ordinary meaning. See Banks v. Chicago Grain Trimmers, 390 U.S. 459, 465, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); United States v. Stewart, 311 U.S. 60, 63, 61 S.Ct. 102, 85 L.Ed. 40 (1940); Independent Meat Packers Ass'n v. Butz, 526 F.2d 228, 237 (8th Cir. 1975), cert. denied, 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976); Andreozzi v. D'Antuono, 113 R.I. 155, 158, 319 A.2d 16, 18 (1974).[3] As a result of this reading of the statute, it is clear that MFS is exempted from membership in SIPC since it is conceded that all of MFS's activity as a broker-dealer is statutorily exempted.
 
 
 14
 SIPC vigorously urges us to interpret § 78ccc(a)(2) in the light of the legislative history of SIPA, which history SIPC views as supportive of its thesis that the "business as a broker or dealer" language in the statute does not have its ordinary meaning but rather means "securities business" in a general sense. Such use of the legislative history would, however, be contrary to the well-established rule that a court "will resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable interpretation." Araya v. McLelland, 525 F.2d 1194, 1195-96 (5th Cir. 1976). See also United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); I. T. T. v. G. T. E., 518 F.2d 913, 917-21 (9th Cir. 1975); Portland Cement Ass'n v. Ruckelshaus, 186 U.S.App.D.C. 308, 486 F.2d 375, 379-80 & n. 13 (1973), cert. denied, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). Since we are satisfied that § 78ccc(a)(2), whether read in isolation or in context, is neither ambiguous nor productive of an unreasonable result, we do not feel required to look to the legislative history for illumination.
 
 
 15
 We have, nevertheless, read through the legislative history of SIPA with care,[4] and we concede that some portions of the history are at least arguably favorable to SIPC's argument that Congress did not wish to grant broad exemptions because it wanted SIPC to be able to raise a great deal of revenue early in its existence. We stress, however, that the legislative history is by no means unequivocal in this sense,[5] but rather is polyvalent and reflective of a multitude of views.[6] When we compare this less than clear legislative history[7] with the straight-forward language of the statute, we are confirmed in our conviction that we should adhere to the latter and interpret it in its usual sense. See Greenwood v. United States, 350 U.S. 366, 374, 76 S.Ct. 410, 100 L.Ed. 412 (1956); Gemsco, Inc. v. Walling, 324 U.S. 244, 260, 65 S.Ct. 605, 89 L.Ed. 921 (1945).
 
 
 16
 It is not our province to decide whether Congress would have been wiser to draft the SIPC legislation so as to include firms like MFS as members, Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 195-96, 57 S.Ct. 139, 81 L.Ed. 109 (1936), and it is no part of our function to extend a statute's reach beyond its clearly indicated scope. Guiseppi v. Walling, 144 F.2d 608, 614-15 (2d Cir. 1944) (Frank, J.) aff'd sub nom. Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945). Rather, "(i)t is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written." United States v. Great Northern Ry., 343 U.S. 562, 575, 72 S.Ct. 985, 993, 96 L.Ed. 1142 (1952). Congress remains free to amend SIPA should it so choose, but as it now stands that act clearly exempts MFS.
 
 
 17
 Affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 The district court carefully recounted the historical background to the establishment of SIPC as an independent corporation by Congress's enactment of the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa et seq. It also described the mechanism whereby SIPC accumulates reserve funds (to protect investors should a brokerage firm collapse) by assessing the "member" firms of SIPC. Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp., 411 F.Supp. 411, 412-14 (D.Mass.1976). See also Securities Investor Protection Corp. v. Barbour, 421 U.S. 412, 415-16, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); 1970 U.S. Code Cong. & Admin. News pp. 5254-85
 
 
 [2]
 Of the four exceptions provided for in the statute, only the first is directly relevant to this case
 
 
 [3]
 SIPC has not met its burden, Commissioner of Internal Revenue v. Barclay Jewelry, Inc., 367 F.2d 193, 196 (1st Cir. 1966), of showing why the crucial statutory language ("whose business as a broker or dealer") should not be given its ordinary meaning. The words "broker" and "dealer" have highly technical meaning in securities law; if Congress had not intended these words to have their usual technical sense, it could very easily have found appropriate language to so indicate. Local 1424, Int'l Ass'n of Machinists v. NLRB, 362 U.S. 411, 417 n. 7, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960)
 We note in this regard that SIPA makes explicit reference to the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.:
 "Except as otherwise provided in this chapter, the provisions of the Securities Exchange Act of 1934 . . . apply as if this chapter constituted an amendment to, and was included as a section of, such Act." 15 U.S.C. § 78bbb.
 This fact reinforces our belief that when Congress used the words "broker" and "dealer" in SIPA, it used them in the technical sense in which they are used in the 1934 Act and in securities law generally. See United States v. Cuomo, 525 F.2d 1285, 1291 & n. 17 (5th Cir. 1976); United Shoe Workers v. Bedell, 165 U.S.App.D.C. 113, 506 F.2d 174, 183 (1974).
 
 
 [4]
 See Patagonia Corp. v. Board of Governors of Federal Reserve System, 517 F.2d 803, 810 n. 10 (9th Cir. 1975)
 
 
 [5]
 See, e. g., the following language from the House report which, in describing the criteria for membership in SIPC, uses the same critical language ("whose business as a broker or dealer") as does § 78ccc(a)(2):
 "Membership in the corporation (SIPC) would consist of all brokers and dealers registered under section 15(b) of the Securities Exchange Act of 1934 and all persons who are members of a national securities exchange, except that persons whose business as a broker or dealer consists exclusively of the distribution of shares of mutual funds or variable annuities, would not be included in membership." H.R. Rep. No. 91-1613, 91st Cong., 2d Sess., 1970 U.S. Code Cong. & Admin. News pp. 5254, 5258.
 
 
 [6]
 It does not strike us as at all surprising that the legislative history is not of one piece. It is quite natural that various and competing interests would seek to have an influence on the shaping of legislation like that which established SIPC. We recall also Justice Jackson's remark that "(i)t is a poor cause that cannot find some plausible support in legislative history, which often includes tentative rather than final views of legislators or leaves misinterpretation unanswered lest more definite statements imperil the chance of passage." Problems of Statutory Interpretation, 8 R.F.D. 121, 125 (1949). See also United States v. Public Utilities Commission, 345 U.S. 295, 319-21, 73 S.Ct. 706, 97 L.Ed. 1020 (1953) (opinions of Jackson and Frankfurter, JJ.)
 
 
 [7]
 "(L)egislative history should be used to resolve ambiguities, and not to create them." National Ass'n of Regulatory Utility Commissioners v. United States, 397 F.Supp. 591, 595 (D.D.C.1975), aff'd, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 630 (1976). See also Railroad Commission v. Chicago, Burlington & Quincy R. R., 257 U.S. 563, 589, 42 S.Ct. 232, 66 L.Ed. 371 (1922); Pennsylvania R. R. v. International Coal Mining Co., 230 U.S. 184, 189, 33 S.Ct. 893, 57 L.Ed. 1446 (1913)