Judith PASKEL

v.

Margaret HECKLER, Secretary of Health and Human Services, and John A. Svahn, Commissioner, Social Security Administration.

Civ. A. No. 83–1201.

United States District Court,
E.D. Pennsylvania.

April 27, 1983.

---

James M. Lafferty, Jonathan M. Stein, David Hill, Community Legal Services, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, Jr., U.S. Atty., Thomas A. Dougherty, Jr., Sp. Asst. U.S. Atty., Gary Turetsky, Dept. of Health & Human Services, Philadelphia, Pa., for defendants.

## MEMORANDUM

BECHTLE, District Judge.

Judith Paskel, a former recipient of Supplemental Security Income disability ("SSI") benefits filed suit in the form of a class action claiming that defendants, the Secretary of Health and Human Services and the Commissioner of the Social Security Administration, had violated section 301 of the Social Security Disability Amendments of 1980, Pub.L. 96–265, Title III, § 301(a) & (b), 94 Stat. 449, 450 (1980) (codified at 42 U.S.C. § 425(b) and 42 U.S.C. § 1383(a)(6)), by terminating certain recipients' disability benefits without considering the criteria provided for in that section. On March 30, 1983, the Court entered an Order in which declaratory and injunctive relief was granted in favor of plaintiff and against defendants. The Court held that termination of Paskel's benefits without a finding by the Secretary under section 301 was in violation of the Act, and accordingly ordered that plaintiff's benefits be reinstated and the case be remanded to the Secretary. Implicit in the Court's ruling was a determination that certain regulations promulgated by the Secretary which precluded plaintiff from ever being considered for continuation of benefits under section 301 were invalid. Class action certification was denied since plaintiff had failed to demonstrate that all prerequisites for class action treatment under Fed.R.Civ.P. 23 had been met. This

Memorandum is entered in support of the Court's Order of March 30, 1983.[1]

## I. FACTS

Plaintiff Judith Paskel applied for SSI benefits in June of 1979, and was found to be disabled due to a seizure disorder diagnosed as grand mal epilepsy. In view of the type of disability suffered by plaintiff and her comparatively young age, then 25, the Pennsylvania State Agency immediately placed her on its medical re-examination diary system. Recipients in the diary system are periodically required to either submit additional medical information or undergo a medical re-examination according to an established schedule which was set up for that individual according to the discretionary judgment of the Agency.[2]

In May of 1981, plaintiff enrolled in a state approved vocational rehabilitation program. Nine months later, in February 1982, she underwent a medical re-examination pursuant to her diary schedule. Following this examination the Agency determined that plaintiff's impairment had improved and that she was no longer eligible for disability. Accordingly, plaintiff was notified that her benefits would terminate.

Plaintiff filed an administrative appeal challenging the termination of her benefits and was granted a *de novo* hearing before an administrative law judge. On August 23, 1982, the ALJ held that plaintiff's seizure disorder was under control, and that plaintiff had ceased to be disabled as of February 1982. Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. As one of her arguments in

---

1. Section 301, the session law section number, applies to both the Title XVI Supplemental Security Income disability and the Title II Social Security disability programs, as codified in 42 U.S.C. § 1383(a)(6) and 42 U.S.C. § 425(b) respectively. However, because class action certification has been denied, this Memorandum concerns only section 301(b), found at 42 U.S.C. § 1383(a)(6), the provision governing plaintiff's Title XVI claim. Hereinafter references to section 301 should be read accordingly.

2. The diary is a tickler system used by the Agency to monitor recipients' continued eligi-

bility for disability benefits. The Social Security operations manual defines the diary as "a basic procedure whereby a continuing disability investigation is undertaken for those individuals whose impairments are expected to improve sufficiently to permit them to engage in substantial gainful activity." Program Operations Manual System, § 2500. The manual requires that certain impairments, such as epilepsy, be placed on a diary for re-examination because of the time limited nature of the disability and the likelihood of significant medical improvement.

support of review, plaintiff raised the claim that she was denied a section 301 determination. Upon considering this, the council concluded, erroneously in plaintiff's view, that an alleged discontinuance of a technical institute training class in March of 1982 due to a seizure meant that plaintiff was no longer participating in the vocational rehabilitation program and therefore section 301 did not apply. As an alternative ground for review plaintiff submitted additional evidence of continuation of her seizures. The council was unconvinced, however, of an error by the ALJ and on February 2, 1983, denied plaintiff's request for review. The hearing decision of the ALJ thus became the final decision of the Secretary.

## II. DISCUSSION

### A. Application of Section 301

Section 301 provides as follows:

Notwithstanding any other provision of this subchapter, payment of the benefit of any individual who is an aged, blind, or disabled individual solely by reason of disability (as determined under section 1382c(a)(3) of this title) shall not be terminated or suspended because the physical or mental impairment, on which the individual's eligibility for such benefit is based, has or may have ceased, if—

(A) such individual is participating in an approved vocational rehabilitation program under a State plan approved under Title I of the Rehabilitation Act of 1973, and

(B) the Commissioner of Social Security determines that the completion of such program or its continuation for a specified period of time, will increase the likelihood that such individual may (following his participation in such program) be permanently removed from the disability benefit rolls.

42 U.S.C. § 1383(a)(6) (amending 42 U.S.C. § 1383 (1974)). Plaintiff claims that defendants terminated her benefits without

making the required section 301 statutory determination of whether benefits, otherwise terminable, might nevertheless be continued by reason of such a finding. Defendants, while conceding that no such determination was made in plaintiff's case, have now taken the position that under the Secretary's regulation, plaintiff was not entitled to such a determination.[3]

The Secretary's regulation regarding the termination of Supplemental Security Income disability benefits, 20 C.F.R. § 416.-1338, reads in pertinent part:

§ 416.1338 If you are participating in a vocational rehabilitation program.

(a) When your benefits based on disability may be continued. Your benefits may be continued after your impairment is no longer disabling if—

(1) Your disability did not end before December 1980, the effective date of the provision of the law;

(2) You are participating in a program of vocational rehabilitation that has been approved under a State plan approved under Title I of the Rehabilitation Act of 1973 and which meets the requirements of 45 C.F.R. 1361.39 for a rehabilitation program;

(3) You began the program before your disability ended;

(4) *At the time you began participating in the program you were not expected to recover medically before the scheduled completion date of the program;*

(5) You still have some residual functional limitations; and

(6) We have determined that your completion of the program, or your continuation in the program for a specified period of time, will significantly increase the likelihood that you will not have to return to the disability benefit rolls.

(Emphasis Added.)

According to defendants' interpretation of this regulation, the first five subpara-

---

**3.** The Appeals Council determined that as plaintiff was not participating in a vocational rehabilitation program at the time she was terminated, section 301 did not apply to her case. Defendants have since conceded that plaintiff

*was* a vocation rehabilitation participant at the time she was terminated. Defendants claim, however, that despite this fact plaintiff still fails to meet the regulatory preconditions for entitlement to a section 301 finding.

graphs set out preconditions which a beneficiary must meet before the Secretary is required to make a section 301 likelihood determination. Defendants argue that because plaintiff was expected to improve medically at the time she began her vocational rehabilitation program, as evidenced by her placement in the diary system, she did not meet the fourth precondition. Accordingly, defendants' view is that plaintiff was not entitled to a determination of whether continuation of benefits would significantly increase the likelihood that she would not return to the disability rolls.

■ In response, plaintiff challenges that legitimacy of the Secretary's regulation on the ground that it adds significant criteria on top of that provided by the statute, specifically the requirement that in order to qualify for coverage under the statute, one must be found to be someone who is not expected to recover medically. Faced with this challenge, the issue which the Court must address is whether the eligibility requirements for section 301 benefits dictated by 20 C.F.R. § 416.1338 are inconsistent with the plain words and meaning of the statute. The Court finds that they are and consequently holds that the regulation is invalid.

■ Congress, in its wisdom, explicitly delegated to the Secretary broad authority to promulgate regulations necessary or appropriate to carry out the provisions of the Social Security Act. 42 U.S.C. § 405(a). While this delegated power to issue regulations has long been recognized and sanctioned as lawful, necessary, and beneficial, it is, however, not without limits. The determination of the validity of regulations is ultimately reserved for the Courts. *See Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). Upon such judicial review, administrative interpretations of statutory terms are given important but not necessarily controlling significance. *Id.* at 424, 97 S.Ct. at 2405. Absent an express congressional delegation of power to prescribe particular standards, the Secretary may not go beyond the boundaries of administrative routine on the one hand and the statutory limits on the other

in promulgating regulations. *Social Security Board v. Nierotko*, 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946). In the present case the Court finds that there was no express delegation of legislative power to the Secretary with respect to interpreting and implementing section 301, and that portion of the regulation at issue materially cuts short the statutory coverage provided by the words of the statute itself. It is for this reason that the Court concludes that the regulation is invalid.

As noted above, 42 U.S.C. § 1383(a)(6) provides that even if a disability beneficiary's impairment *has* ceased, that individual shall not be terminated if he or she is participating in an approved vocational rehabilitation program and "the Commissioner of Social Security determines that the completion of such program ... will increase the likelihood that such individual may (following his participation in such program) be permanently removed from the disability benefit rolls." *Id.* The language of this statute is clear on its face. In plain and unmistakable words, free of ambiguity or qualification, it states that persons in vocational rehabilitation programs (which includes the plaintiff) are entitled to a "likelihood" determination before their benefits are terminated. Plaintiff fits the definition foursquare. She was entitled to a determination *before* her benefits were terminated. She was denied what Congress gave her by the application of an agency regulation that Congress never sanctioned.

■ Defendants direct the Court's attention to a conference agreement between the House and the Senate which states that Congress intended to confine application of section 301 to a limited number of beneficiaries. This contemplated class of beneficiaries included only those cases where the disabled beneficiary was not expected at the beginning of the program to recover medically before the end of the program, but then, he or she does recover and is no longer considered disabled, although some residual functional limitation still remains. H.Conf.Rep. No. 96–944, 96th Cong., 2nd Sess. 52, *reprinted in* [1980] U.S.Code Cong. & Admin.News, pp. 1392, 1400. In appropriate cases, Congressional reports such as

this one are given consideration in determining the meaning of a statute, but only where the meaning is in doubt. Legislative history cannot be used to construe a statute contrary to the plain meaning of its terms. If the language is clear, it is conclusive. *United States v. Shreveport Grain & Elevator Co.,* 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175 (1932).

The Secretary's comments preceding the text of the regulations indicate that she perceived an ambiguity in the meaning of the word "likelihood" as used in the statute. 47 Fed.Reg. 31540–41 (1982). It was because of this alleged ambiguity that the Secretary claims she looked to the legislative history for guidance in applying the statute. *Id.* Despite this explanation the regulation does not make the statutory language any clearer because it uses the same word ("likelihood") in the same context as the statute. The regulation's subparagraph 6, 20 C.F.R. § 416.1338(a)(6), merely restates the wording of the statute with the addition of the word "significantly." Under the regulation, even assuming a beneficiary has met the preconditions set out in subparagraphs 1–5, the Commissioner still must determine under subparagraph 6 "that your completion of the program, or your continuation in the program for a specified period of time, will significantly increase the likelihood that you will not have to return to the disability rolls. 20 C.F.R. § 416.1338(a)(6) (emphasis added). It therefore cannot be said that subparagraphs 4 or 5, which add qualification criteria not included in the statute, clear up any ambiguity as to the meaning of the word "likelihood" or give guidance to application of the statute. To the contrary, these subparagraphs create ambiguity by placing additional subjective conditions on the recipient's entitlement to statutory protection. Further, in so doing, the regulation has effectively excluded certain vocational rehabilitation participants from the statute's coverage altogether. This is impermissible in the face of clear statutory language which mandates that the statute shall apply to *any* disabled participant enrolled in a vocational rehabilitation program. By promulgating this regulation the Secretary

clearly has entered into the legislative realm and beyond the limit of administrative need. In view of the above, the Court is convinced, and so holds, that the regulation at issue is invalid.

### B. The Class Action Issue

■ In her original complaint, plaintiff moved for class certification under Fed.R. Civ.P. 23(b)(2) defining the purported class as follows: all individuals who reside in Pennsylvania whose Social Security and SSI benefits the Social Security Administration has considered, or is presently considering, or will consider terminating while he or she was enrolled, is enrolled or will be enrolled in a vocational Rehabilitation program. Before a suit may be maintained as a class action the four prerequisites set out in Rule 23(a) must be met. Plaintiff bears the burden of proof on this issue. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

■ In the present case and on the present record it is clear that plaintiff cannot meet the first Rule 23(a) requirement of numerosity. Without any form of supporting documentation plaintiff merely states that "on information and belief, plaintiff can reasonably aver that the vocational rehabilitation services offered throughout Pennsylvania serve thousands of disabled persons [and] ... it is also reasonable to presume that many are recipients of Social Security and SSI disability benefits...." Plaintiff's Memorandum in Support of Motion for Certification of a Class, p. 6. This statement, which amounts to mere speculation, fails to convince the Court that the class action vehicle should be set in motion. The criteria set out in Rule 23(a) are designed to safeguard against the indiscriminate use of class action suits and the Court is obligated to carefully scrutinize plaintiff's evidence on the question. Allegations alone, that the numerosity requirement has been met, are not sufficient to satisfy plaintiff's burden. *In re Fine Paper Antitrust Litigation,* 82 F.R.D. 143, 149 (E.D.Pa.1979); *Peterson v. Lehigh Valley Dist. Council, United Brotherhood of Carpenters and Joiners,* 83 F.R.D. 474 (E.D.Pa.1979). The

Court has a strong interest in ensuring that the class action device is not improperly engaged. Certifications which are improvidently granted are not easily undone. In view of the record before it, the Court finds that the numerosity requirement has not been met. Accordingly, class action certification must be and has been denied.

### III. CONCLUSION

Upon careful consideration of the statutory language and pertinent authority, the Court holds that promulgation of 20 C.F.R. § 416.1338 was not within the authority delegated to the Secretary and is inconsistent with the clear language of the statute. Accordingly, the regulation is invalid.

Class action certification has been denied for the reasons stated.

An Order in accordance with this Memorandum has already been entered.