Paul DION, Plaintiff,

v.

Margaret HECKLER, Secretary of Health and Human Services and Margaret A. McSteen, Commissioner, Social Security Administration, Defendants.

Civ. A. No. 84–0031–F.

United States District Court,
D. Massachusetts.

April 10, 1984.

John C. Sikorski, James H. Tourtelotte, Robinson, Donovan, Madden & Barry, P.C., Springfield, Mass., for plaintiff.

C. Brian McDonald, Asst. U.S. Atty., Springfield, Mass., for defendants.

## MEMORANDUM AND ORDER

FREEDMAN, District Judge.

### I. Introduction

This matter is before me on plaintiff Paul Dion's motion for a preliminary injunction. Plaintiff seeks to enjoin the Secretary of Health and Human Services ("Secretary") from terminating plaintiff's disability benefits before the Commissioner of Social Security ("Commissioner") has made the determination required by 42 U.S.C. § 425(b).

To prevail on a motion for a preliminary injunction, plaintiff must satisfy four criteria: 1) plaintiff must show he will suffer irreparable harm if this Court does not grant the injunction; 2) plaintiff must demonstrate that the harm to him of denying the injunction outweighs the harm to the defendants of granting it; 3) plaintiff must prove he is likely to succeed on the merits of his cause; and 4) plaintiff must establish that the public interest will not be harmed by granting the injunction. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981). I have concluded that plaintiff has met these four criteria and is therefore entitled to preliminary injunctive relief.

### II. Findings of Fact

1. Plaintiff is a thirty-four year old man receiving disability benefits pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* Plaintiff began receiving benefits as of May 5, 1978 based on his application of January 23, 1979. He was found to be disabled primarily because of a severe crushing injury to his right arm, which occurred when the arm was caught in a conveyor belt.

2. In September 1979, plaintiff became a client of the Massachusetts Rehabilitation Commission, which runs federally-approved vocational rehabilitation programs. After unsuccessful attempts at electronics and electrical drafting, plaintiff entered a ma-

chinists' training program in the fall of 1982. Plaintiff expects to complete this program next month and graduate in June as a skilled machinist.

3. At some point after he first started vocational rehabilitation but before he entered the specific program he now expects to complete, plaintiff was "diaried" for medical re-examination by the Social Security Administration ("SSA"). The diary is a system SSA uses "to monitor recipients' continued eligibility for disability benefits." *Paskel v. Heckler*, 563 F.Supp. 1095, 1097 n. 2 (E.D.Pa.1983). Thus, there was some expectation on the part of SSA that plaintiff's medical condition would improve to the point where he could once again engage in substantial gainful activity.

4. Because of examinations conducted in October 1982, SSA concluded that plaintiff's disability had ceased due to medical improvement. Accordingly, SSA terminated plaintiff's benefits as of December 1982. Plaintiff pursued his administrative appeals; however, both the Administrative Law Judge ("ALJ") and the Appeals Council upheld the denial of benefits.

5. In terminating plaintiff's benefits, SSA, the ALJ and the Appeals Council all refused to apply § 301(a) of Title III of the 1980 amendments to the Act, 42 U.S.C. § 425(b), which reads as follows:

> Notwithstanding any other provision of this title, payment to an individual of benefits based on disability (as described in the first sentence of subsection (a)) shall not be terminated or suspended because the physical or mental impairment, on which the individual's entitlement to such benefits is based, has or may have ceased, if—
>
> (1) such individual is participating in an approved vocational rehabilitation program under a State plan approved under title I of the Rehabilitation Act of 1973, and
>
> (2) the Commissioner of Social Security determines that the completion of such program, or its continuation for a specified period of time, will increase the likelihood that such individual may

(following his participation in such program) be permanently removed from the disability benefit rolls.

These officials based their refusal to apply § 301 to plaintiff on 20 C.F.R. § 404.316, which says that to qualify under § 301(a) for continuation of benefits, the recipient must not have been "expected to recover medically before the scheduled completion date of the program." 20 C.F.R. § 404.-316(c)(1)(iv). Since plaintiff had been diaried for re-examination before he entered the machinists' program, SSA reasoned, he was expected to recover medically and was not entitled to continuation of benefits under § 301(a). Therefore, in plaintiff's case, the Commissioner need not even make the § 301(a) inquiry.

6. During the administrative appeal process, plaintiff continued to receive provisional benefits. However, with the decision of the Appeals Council, plaintiff has not received benefits since December 1983. Furthermore, SSA is demanding that plaintiff repay the provisional benefits he received, a sum which comes to over $14,000.

7. Plaintiff, who has a wife and a child, is chafing under the burden of not receiving benefits. As of February, plaintiff's current monthly expenses were $1,550. He faced tuition expenses of $475 for this term. He has had to borrow money to meet his living expenses. It is possible that he will have to drop out of his rehabilitation program before graduation due to financial and its concomitant psychological pressure.

## III. Conclusions of Law

### A. Likelihood of Success on the Merits

■ 1. The Secretary has broad authority to enact regulations to carry out the provisions of the Act. 42 U.S.C. § 405(a) reads in pertinent part:

The Secretary shall have full power and authority to make rules and regulations and to establish procedures, *not inconsistent with the provisions of this title,* which are necessary or appropriate to carry out such provisions ....

*Id.* (emphasis added).

■ 2. Where there is an explicit delegation of substantive authority, the court's role is limited to determining if the Secretary exceeded her statutory authority or enacted an arbitrary and capricious regulation. *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). The Secretary exceeds her authority when she enacts regulations that are inconsistent with the statute. *See* 42 U.S.C. § 405(a).

■ 3. The portion of the regulation on which the Secretary relies to deny plaintiff a § 301 determination is inconsistent with the clear language of the statute. The text of § 301(a) states unequivocally that a medically-improved recipient's benefits *shall not* be terminated if he is currently in an approved rehabilitation program and the Secretary determines his continuation will increase the likelihood of his being permanently removed from the disability rolls. "The statute fits [the plaintiff] like a glove." *Ciampa v. Secretary of Health and Human Services,* 687 F.2d 518, 524 (1st Cir.1982). There is nothing in the clear language of § 301(a) that limits § 301 determinations to recipients who were not expected to recover medically before they finished their rehabilitation program.

4. The Secretary urges this Court to rely on portions of § 301's legislative history which indicate that Congress intended such a limitation. H.Conf.Rep. No. 96–944, 96th Cong., 2d Sess. 52, *reprinted in* [1980] U.S.Code Cong. & Admin.News, 1392, 1400. However, this Court declines the invitation to examine the legislative history. "When we find the terms of a statute unambiguous, judicial inquiry is complete except 'in "rare and exceptional circumstances." ' " *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (*quoting Tennessee Valley Authority v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117 (1978), and *Crooks v. Harrel-*

*son*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930)). Such "rare and exceptional circumstances" cannot exist when the Secretary merely points to a portion of the legislative history as supporting her interpretation, as such an approach would completely eviscerate "the well-established rule that a court 'will resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable interpretation.'" *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*, 545 F.2d 754, 757 (1st Cir.1976) (*quoting Araya v. McLelland*, 525 F.2d 1194, 1195–96 (5th Cir. 1976)), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The First Circuit Court of Appeals has repeatedly refused to go behind clear statutory language in the absence of good reasons for doing so. *See Ciampa, supra* p. 874; *Massachusetts Financial Services, supra; Barry v. St. Paul Fire & Marine Insurance Co.*, 555 F.2d 3 (1st Cir.1977), *aff'd* 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). The Secretary has not convinced this Court that reading § 301(a) to mandate determinations for those who were expected to recover medically at the start of a rehabilitation program leads to an absurd result. Nor has she, by creating ambiguity with the legislative history, shown "a sufficient basis for ignoring clear, statutory language." *Ciampa, supra* p. 874, at 526.

5. The Secretary argues that there is ambiguity in the word "likelihood," which appears in § 301(a), and that the regulation is justified because it gives the meaning to the word that Congress intended, as evidenced by the legislative history. Unfortunately, the portion of the regulation this Court invalidates today does nothing to clarify the meaning of the word "likelihood." "Likelihood" refers to the chances of a medically-recovered recipient's being permanently removed from the rolls after he finishes his rehabilitation program. It is an assessment that must be made of all medically-recovered recipients and it matters not, for purposes of this determination, *when* they recovered. Thus, adding the requirement that a recipient not be expected to recover medically before the end of his rehabilitation program in no way illuminates the "likelihood" inquiry. This is evident from part (vi) of the Secretary's own regulation, which still includes the "likelihood" wording of the statute in all its original mystery. *Paskel, supra* p. 873, at 1100.

**B. Irreparable Injury**

6. The benefit cut-off has drastically affected the plaintiff and his family and their ability to meet basic living expenses. Without continued benefits, there is a serious possibility plaintiff will have to drop out of his rehabilitation program. The fact that plaintiff "is in exactly the same situation as the many others the Secretary terminates" does not make his harm somehow less irreparable. Nor does the possibility that plaintiff may eventually prevail and receive full compensation "mitigate[ ] the hardship visited upon [plaintiff and his family] each and every day." *Leschniok v. Heckler*, 713 F.2d 520, 524 (9th Cir.1983).

**C. Balance of Harm**

7. The Secretary argues that to enter a preliminary injunction in this case "would be extremely disruptive to the Secretary's administrative processes ...." However, "[t]he more foreseeable is the plaintiff's ultimate success, the less weight is to be given to the defendant's prospective loss." *Securities and Exchange Commission v. World Radio Mission, Inc.*, 544 F.2d 535, 541–42 (1st Cir.1976). Since plaintiff here has shown a very strong likelihood of success on the merits, any disruption to the Secretary must be correspondingly discounted. The harm to plaintiff of denying relief therefore clearly outweighs the harm to the Secretary of granting it.

**D. The Public Interest**

8. As the Court of Appeals for the Ninth Circuit stated in *Leschniok, supra:*

Congress defined the public interest when it mandated that the Commissioner of Social Security shall take into consideration whether continuation of benefits during the rehabilitative period will in-

crease the likelihood that the person may be permanently removed from the disability rolls.

*Id.* at 524. It is clearly in the public interest to order the Secretary to obey the express mandate of Congress, which in this case means giving plaintiff a § 301 determination before terminating his benefits.

### IV. Summary

Because plaintiff has demonstrated a likelihood of success on the merits, has proven irreparable harm, has shown that the balance of hardship weighs in his favor and has convinced this Court that the public interest is served by granting plaintiff's requested relief, the Court Orders and Decrees as follows:

1. 20 C.F.R. 404.316(c)(1)(iv) is declared invalid.

2. Defendant Secretary is enjoined from terminating plaintiff's benefits before the defendant Commissioner makes the determination required by § 301, 42 U.S.C. § 425(b).

3. Defendant Secretary is Ordered to reinstate plaintiff's benefits and to immediately pay plaintiff the benefits to which he would have been entitled since December 1, 1983 had not the defendant Secretary wrongfully terminated plaintiff's benefits.

4. Defendant Secretary is enjoined from seeking reimbursement from plaintiff for alleged overpayments until the Commissioner makes the determination required by § 301, 42 U.S.C. § 425(b).

It is So Ordered.