768 F.2d 540
 10 Soc.Sec.Rep.Ser. 285, Unempl.Ins.Rep. CCH 16,231
Judith PASKEL, Individually on behalf of herself and all
others similarly situated, Appellees/Cross-Appellants,
v.
Margaret HECKLER, Secretary of Health and Human Services,
John A. Svahn, Commissioner, Social Security Administration,
Margaret Heckler, Secretary of Health and Human Services,
Appellant/Cross-Appellee.
 Nos. 83-1800, 84-1060 and 84-1067.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 10, 1984.
Decided July 23, 1985.
As Amended July 31, 1985.
 
 Richard K. Willard, Acting Asst. Atty. Gen., William Kanter, Margaret E. Clark (argued), Appellate Staff Civil Div. Washington, D.C., Edward S. G. Dennis, Jr., U.S. Atty., Michael L. Martinez, Philadelphia, Pa., for appellant/cross-appellee.
 Jonathan M. Stein (argued), James Lafferty, David L. Hill, Community Legal Services, Philadelphia, Pa., for appellees/cross-appellants.
 Before ADAMS, HIGGINBOTHAM and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 Ordinarily, disability benefits under either Title II or Title XVI of the Social Security Act will be terminated when the recipient's medical condition has improved. See Kuzmin v. Schweiker, 714 F.2d 1233 (3d Cir.1983). In Section 301 of the Social Security Disability Amendments of 1980, Pub.L. No. 96-265, Title III, Sec. 301, 94 Stat. 441, 449-50 (codified as amended at 42 U.S.C. Secs. 425(b), 1383(a)(6) (1982)). Congress provided that recipients of disability benefits who were participating in approved vocational rehabilitation programs could not be terminated because of medical improvement if the Commissioner of Social Security determined that completion of the program would "increase the likelihood that [the recipient would] be permanently removed from the disability benefit rolls." The plaintiff, Judith Paskel, who was participating in such a program, was nonetheless terminated without the Congressionally-mandated Section 301 determination.
 
 
 2
 It has been the position of the Secretary of Health and Human Services, relying on her own regulation, that Paskel and similarly situated persons are not entitled to a Section 301 determination. The Secretary's regulation, 20 C.F.R. Sec. 416.1338(a) (1984), applicable to beneficiaries such as Paskel who are receiving Supplemental Security Income under Title XVI, limits the Section 301 determination to those persons who "[a]t the time [they] began participating in the [vocational rehabilitation] program ... were not expected to recover medically before the scheduled completion date of the program." The comparable regulation for those persons receiving disability payments under Title II is 20 C.F.R. Sec. 404.1586(f) (1984). They will be referred to throughout as one regulation.
 
 
 3
 Plaintiff filed suit contending that this regulation was invalid because it contradicted the clear language of the statute. The district court certified Paskel as the representative of the following class:
 
 
 4
 All individuals who reside in Pennsylvania whose Social Security and SSI benefits the Social Security Administration has considered, or is presently considering, without making appropriate and mandated determinations to continue disability benefits under 42 U.S.C. Secs. 425(b) and 1383(a)(6), while the individual was enrolled or is enrolled in a Vocational Rehabilitation Program.
 
 
 5
 After modifying the class,[1] the district court, which had previously granted summary judgment for the plaintiff, Paskel v. Heckler, 563 F.Supp. 1095 (E.D.Pa.1983), then also granted summary judgment in favor of the class. In the portion of the district court's initial order of March 30, 1983 directed to Paskel's claims, the court entered judgment for Paskel, awarded her back benefits, reinstated present benefits and enjoined the Secretary from terminating her benefits without a Section 301 determination. With respect to the class, the court ordered reinstatement of benefits and enjoined the Secretary from terminating class members without Section 301 determinations.
 
 
 6
 The Secretary has appealed, defending the validity of her regulation. The plaintiff class cross-appealed, challenging the district court's modification of the class and its failure to grant back benefits to the class members. After oral argument, there was substantial supplemental briefing with regard to the effect on the issues in the cross-appeal of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, 98 Stat. 1794, enacted October 9, 1984, and the Supreme Court's actions in Heckler v. Lopez, --- U.S. ----, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984), and Heckler v. Kuehner, --- U.S. ----, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984). Thereafter, the plaintiff class, with the consent of the court, voluntarily withdrew its cross appeal without prejudice to its right to seek a final judicial determination of the issue therein in another case or forum. Thus, the only remaining issue before this court in this action is that presented by the government in its appeal, which relates to Section 301(a) of the Social Security Disability Amendments of 1980 and the Secretary's regulation with regard thereto.
 
 II.
 
 7
 The issue can be clarified by reviewing the case of the named plaintiff and class representative, Judith Paskel, who applied for SSI benefits in June 1979. She was found to be disabled due to a seizure disorder diagnosed as grand mal epilepsy. The Pennsylvania State Agency placed Paskel on its "diary system" which requires recipients periodically to supply additional medical information to justify continuing eligibility. This system is employed to monitor recipients who, for one reason or another, are deemed likely to improve, and who are therefore subject to continuing disability investigation.
 
 
 8
 In May 1981, Paskel enrolled in a state-approved vocational rehabilitation (VR) program. Pursuant to her diary schedule, she was medically re-examined in February 1982 and was found to have medically improved. She was therefore notified that her benefits would terminate without the Secretary's having made a Section 301 determination. She filed a pro se administrative appeal on the issue of improvement, but, after a de novo hearing, the ALJ held that her disorder was under control. Paskel, now with counsel, sought review of the ALJ's decision in the Appeals Council, raising the claim that she was denied a Section 301 determination as well as offering additional evidence of continued seizures and depression. Termination of her benefits, however, had allegedly deepened her depression, and in January 1983, she attempted suicide. During this period, she gave up plans for vocational rehabilitation. The Appeals Council rejected both of her arguments and, on February 2, 1983, denied her request for review.[2]
 
 
 9
 Paskel's complaint in district court sought declaratory and injunctive relief for the class of disability recipients participating in VR programs who had been denied Section 301 determinations. It also sought immediate reinstatement for Paskel on the ground that, contrary to the ALJ's finding, she had not medically improved.
 
 
 10
 In granting summary judgment on the merits first for Paskel and then for the class, the district court held that the portion of the regulation on which the Secretary relied in failing to make a Section 301 determination for Paskel is invalid because it "cuts short the statutory coverage provided by the words of the statute itself" and is "inconsistent with the plain words and meaning of the statute." 563 F.Supp. at 1099.[3]
 
 
 11
 The district court rejected the Secretary's argument that language in the legislative history of Section 301 justified the regulatory provision. The court stated:
 
 
 12
 In appropriate cases, Congressional reports such as this one are given consideration in determining the meaning of a statute, but only where the meaning is in doubt. Legislative history cannot be used to construe a statute contrary to the plain meaning of its terms. If the language is clear, it is conclusive.
 
 
 13
 Id. at 1099-1100.
 
 III.
 
 14
 The Secretary argues that the district court erred in refusing to consider what the Secretary believes is illuminative legislative history. Plaintiff responds that when the statute is plain and unambiguous, as she believes Section 301 is, judicial inquiry need go no further than the statute itself.
 
 
 15
 Language can be found in Supreme Court opinions to support both principles. Some opinions suggest that it is always appropriate to look to the legislative history to help interpret a statute, see, e.g., Train v. Colorado Public Interest Research Group, Inc., 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976). See also United States v. Duncan, 527 F.2d 1278, 1280 (3d Cir.1975). Others suggest that when the language of a statute is clear, "judicial inquiry is complete", see, e.g., Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). In our view, the first principle is the correct one, and the second is merely an overstatement of the qualification that clear statutory language places an extraordinarily heavy burden on the party who seeks to vary it by reference to legislative history. See generally Murphy, Old Maxims Never Die: The "Plain-Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts, 75 Colum.L.Rev. 1299 (1975). Thus, we reject Paskel's argument that the legislative history is entitled to no consideration at all, since the relevant utterances of a co-ordinate branch of our government should be scrutinized for whatever assistance they may afford. On the other hand, we must recognize that overemphasis on legislative guides may lead to a distorted view of the statutory purpose, "for much less thought is spent on the future implications of committee reports and explanations on the floor than in choosing the words of a statute." Cox, Judge Learned Hand and the Interpretation of Statutes, 60 Harv.L.Rev. 370, 381 (1947).
 
 
 16
 We turn then to examine the language of Section 301 to determine if it is indeed unequivocal, as both courts that have had occasion to consider it have said, see Leschniok v. Heckler, 713 F.2d 520, 522-23 (9th Cir.1983); Dion v. Heckler, 582 F.Supp. 872, 874-75 (D.Mass.1984), and the legislative history relied on by the Secretary. In virtually identical language applicable to Titles II and XVI, the 1980 Amendments provide:
 
 
 17
 Notwithstanding any other provision of this subchapter, payment to an individual of benefits based on disability ... shall not be terminated or suspended because the physical or mental impairment, on which the individual's entitlement to such benefits is based, has or may have ceased, if--
 
 
 18
 (1) such individual is participating in an approved vocational rehabilitation program under a State plan approved under title 1 of the Rehabilitation Act of 1973, and
 
 
 19
 (2) the Commissioner of Social Security determines that the completion of such program, or its continuation for a specified period of time, will increase the likelihood that such individual may (following his participation in such program) be permanently removed from the disability benefit rolls.
 
 
 20
 42 U.S.C. Sec. 425(b) (Social Security Disability provision) (emphasis added). See also 42 U.S.C. Sec. 1383(a)(6) (the Supplemental Security Income Disability provision governing Paskel's claim).
 
 
 21
 As the Senate Report accompanying Section 301 noted, under the law as it stood before the enactment of the 1980 Amendments persons who were participating in a vocational rehabilitation program were eligible for disability benefits only so long as they continued to meet the definition of disability for the Disability Insurance and Supplemental Security Income programs. The Report stated, "Even in cases where continuation in a [vocational rehabilitation] program might substantially improve an individual's chances of permanent productive employment, his disability benefits are ended when he is determined to have medically recovered, and as a result he may be forced to discontinue his participation in a rehabilitation program." S.Rep. No. 408, 96th Cong., 1st Sess. 49-50 (1979), reprinted in 1980 U.S.Code Cong. & Ad.News 1277, 1327-28. Section 301 was obviously designed to change that situation.
 
 
 22
 The statutory language unambiguously provides that disability payments are to continue for any individual in a vocational rehabilitation program if the Secretary makes the required Section 301 determination that continuation or completion of the program is likely to enable the individual to be permanently removed from the disability benefit rolls. It follows that benefits to an individual enrolled in a VR program may not be terminated until such a determination has been made.
 
 
 23
 The Secretary, pursuant to her authority under 42 U.S.C. Sec. 405(a) to make "rules and regulations and to establish procedures ... which are necessary or appropriate to carry out ... [the] provisions [of the statute]", promulgated the regulation at issue. It provides:
 
 
 24
 Your benefits may be continued after your impairment is no longer disabling if--
 
 
 25
 (1) Your disability did not end before December 1980 ...;
 
 
 26
 (2) You are participating in a program of vocational rehabilitation ...;
 
 
 27
 (3) You began the program before your disability ended;
 
 
 28
 (4) At the time you began participating in the program you were not expected to recover medically before the scheduled completion date of the program;
 
 
 29
 (5) You still have some residual functional limitations; and(6) We have determined that your completion of the program ... will significantly increase the likelihood that you will not have to return to the disability rolls.
 
 
 30
 20 C.F.R. Sec. 416.1338(a) (emphasis added). See also 20 C.F.R. Sec. 404.1586(f).[4]
 
 
 31
 This regulation reflects the Secretary's interpretation of the statute as authorizing her to terminate benefits without a Section 301 determination for any individual in a vocational rehabilitation program who has medically improved but who the Secretary believes was expected to improve at the time s/he entered such program. The effect of this interpretation is that any disability recipient who, like Paskel, was on the diary system could virtually never satisfy subsection (4) because by definition persons on the dairy system were deemed "expected to recover". In fact, the internal procedures of the Social Security Administration, as reflected in its Program Operations Manual System, Sections A.2810.1 (Oct. 16, 1980) and 00502.043A (Jan. 8, 1982), make it explicit that no one on a diary system will be entitled to a Section 301 determination. As a result of the Secretary's regulation and interpretation of the statute, she provided only 4 Section 301 "likelihood determinations" in 1982 even though there were apparently several hundred persons in vocational rehabilitation programs whose disability benefits were terminated due to medical improvement.
 
 
 32
 The Secretary attempts to justify this restrictive grant of Section 301 "likelihood determinations" on the basis of statements in short Senate and Conference Reports which she claims demonstrate that Congress intended to confine application of Section 301 to a limited number of beneficiaries. The Senate Report states, in part:
 
 
 33
 The committee expects that in most cases medical cessation of disability will result in the termination of benefits, as occurs now in all cases. The committee provision is intended to take into account those exceptional cases where the administration is able to determine that continuation in a vocational rehabilitation program will increase the likelihood of the individual's being permanently removed from the disability rolls.
 
 
 34
 S.Rep. No. 408, 96th Cong., 1st Sess. 50 (1979), reprinted in 1980 U.S.Code Cong. & Ad.News 1277, 1328. The Conference Report contains the following passage:
 
 
 35
 The conference committee wishes to make clear that it expects that, in most cases, medical cessation of disability will result in the termination of benefits, as now occurs in all cases. The conferees are concerned that under present vocational rehabilitation procedures many individuals have been permitted to enter approved programs even when there is a reasonable expectation of medical recovery before the termination of the program. (This is demonstrated by the fact that an increasing number of individuals have been terminated from the benefit rolls while participating in a State approved vocational rehabilitation program who were at the time of enrollment in the program diaried for reexamination on the basis of the time-limited nature of their medical impairment.) It is not the intent of this provision to continue benefits in these cases. It is the intent of the provision to consider only those exceptional cases where the disabled beneficiary is not expected at the beginning of the program to recover medically before the end of the program, but he or she does recover and is no longer considered disabled within the meaning of the Social Security Act, although some residual functional limitation still remains.
 
 
 36
 H.Conf.Rep. No. 944, 96th Cong., 2d Sess. 52, reprinted in 1980 U.S.Code Cong. & Ad.News 1392, 1400.
 
 
 37
 We find nothing in these excerpts to indicate a congressional understanding that disability payments may be terminated without a "likelihood determination" because the recipient was expected to recover when s/he entered the vocational rehabilitation program. In the first place, the language of the statute is clear and unambiguous in requiring a "likelihood determination" for any individual in a VR program before benefits are terminated on the ground of medical improvement. Section 301 provides disability payments "shall not be terminated or suspended" if the individual meets the two explicit conditions--participation in a VR program and a favorable "likelihood determination." If Congress had intended that Section 301 determinations would be made only when a recipient "unexpectedly" recovered, it could and would have so stated in the language of the provision.
 
 
 38
 In the second place, we cannot assume that what Congress explicitly provided it implicitly intended to abrogate. The Secretary has stipulated in this case that at least 50% of the 4,328 Pennsylvania beneficiaries of disability insurance who were also actively participating in a vocational rehabilitation program in that state were diaried for continuing disability investigations when they first came on the disability program. App. at 70. Under the regulation, therefore, at least half of all those for whom the statute was expressly intended would not be entitled even to consideration for continued benefits.
 
 
 39
 In the third place, and perhaps most importantly, the excerpts on which the Secretary relies appear to be directed to the result of the Section 301 "likelihood determination" as distinguished from entitlement to the Section 301 "likelihood determination" itself. Although the Reports may reflect a congressional expectation that "in most cases, medical cessation of disability will result in the termination of benefits, as occurs now in all cases," Senate Report at 50, 1980 U.S.Code Cong. & Ad.News at 1328, such an expectation is not inconsistent with and should not be used to nullify the statutory language requiring that such terminations be preceded by a Section 301 determination. The explanation most consistent with the language of the statute and the legislative reports is that Congress believed Section 301 "likelihood determinations" would result in findings that many of those who were in VR programs and had medically improved were not likely to be permanently taken off the disability rolls or that the vocational rehabilitation programs would not increase such likelihood. In any event, while the legislative history may create some ambiguity about the congressional intent, it is not sufficiently persuasive to overcome the specific language of the statute requiring Section 301 likelihood determinations.
 
 
 40
 Accordingly, we agree with the district court's conclusion that the regulation impermissibly adds a requirement to continuation of disability benefits that is neither expressly nor implicitly contained in Section 301.
 
 
 41
 The result we reach is consistent with that of each of the other courts that has considered the issue. The Ninth Circuit in Leschniok v. Heckler, 713 F.2d 520, was unanimous in ruling that the Secretary's regulation is inconsistent with the plain meaning of the statute in not requiring determinations as to whether disability recipients in vocational rehabilitation programs meet the statutory criteria for continued benefits. As Judge Sneed wrote, if the Secretary is faced with a statute that did not reflect what she perceived was the intent of Congress, she must go to the Congress to obtain a clarifying amendment. Id. at 524 (Sneed, J., concurring). Similarly, in Dion v. Heckler, 582 F.Supp. 872, the court held, "There is nothing in the clear language of Sec. 301(a) that limits Sec. 301 determinations to recipients who were not expected to recover medically before they finished their rehabilitation program." Id. at 874. Both courts held that the Secretary was required to maintain the respective plaintiffs' benefits until the Commissioner makes the determination set forth in Section 301. We will, for similar reasons, affirm the district court's order invalidating the regulation.
 
 IV.
 
 42
 In her appeal the Secretary did not challenge the propriety of the district court's prospective reinstatement of benefits to the plaintiff class pending completion of their Section 301 determinations. Indeed the Secretary's brief expressly stated that the decision of the Eighth Circuit in Mental Health Association v. Heckler, 720 F.2d 965 (8th Cir.1983), "establishes that a grant of prospective relief where reinstatement of disability benefits is involved is a proper and adequate remedy that returns litigants to the status quo." Brief for the Secretary in Reply and as Cross-Appellee at 23. At oral argument the Secretary requested permission to file a supplemental brief changing its position on this issue. We permitted the filing of briefs, and now consider the issue on the merits because the Secretary contends that the sovereign immunity issue that she raises goes to the court's jurisdiction.[5]
 
 
 43
 The Secretary argues that because the statute provides that there must be a "final decision" by the Secretary or a "final judgment" by a court that the person is "entitled" to benefits, see 42 U.S.C. Sec. 405(i) (1982), sovereign immunity proscribes the district court's order to reinstate benefits to the plaintiff class pending completion of their Section 301 determinations. The Secretary cites no authority applying sovereign immunity to restrict a court's right to reinstate Social Security benefits improperly terminated. In fact three circuits have considered and rejected the Secretary's "sovereign immunity" assertion. The Second Circuit explained, "the payment of benefits to wrongfully terminated recipients follows a final decision of the Secretary and consequently is consistent with the requirements of Section 405(i)." City of New York v. Heckler, 742 F.2d 729, 740 (2d Cir.1984), opinion on petition for rehearing, 755 F.2d 31 (2d Cir.1985), petition for cert. filed, --- U.S. ----, 105 S.Ct. 3552, 87 L.Ed.2d 671 (1985) (citing Lopez v. Heckler, 725 F.2d 1489, 1508-09 (9th Cir.), vacated and remanded on other grounds, --- U.S. ----, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984) and Mental Health Association v. Heckler, 720 F.2d at 972 n. 18 (8th Cir.1983)). Since we find this argument persuasive and dispositive we need not in this case rely on any more general waiver of sovereign immunity in the Social Security Act or on our inherent equitable powers.
 
 
 44
 For the reasons set forth above we will affirm the orders of the district court that are the subject of the Secretary's appeal. It appears that Paskel's individual claim raised a "medical improvement" claim within the meaning of Section 2(d)(6) of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, 98 Stat. 1794, 1796 and therefore must be remanded to the Secretary. Id. Sec. 2(d)(2)(C). The Secretary suggested, without any opposition, that under the unique circumstances of this case it was not necessary to remand Paskel's claim until we disposed of the merits. Having done so, we will remand that claim to the district court so that the parties can be heard with respect to the propriety of a remand by the district court to the Secretary pursuant to that Act, which was passed after the district court's disposition of this case.
 
 
 
 [1]
 The court modified the class to exclude,
 those persons meeting the above description who received final decisions of the Secretary before January 10, 1983 [sixty days before suit was filed], informing them that their benefits were terminated and who either did not seek judicial review thereof within sixty (60) days, or did seek timely judicial review thereof but have already had their claims judicially decided.
 App. at 41.
 
 
 [2]
 Although the Appeals Council determined that Paskel was not participating in a VR program when she was terminated, the Secretary conceded in the district court that she was. Before the district court, the Secretary relied exclusively on the validity of her regulations in asserting that Paskel had no right to a Section 301 determination
 
 
 [3]
 After certifying the class, the district court granted summary judgment invalidating the challenged subparagraphs of 20 C.F.R. Sec. 404.1586(f), the Title II regulation that is virtually identical to the Title XVI regulation governing Paskel's individual case, 20 C.F.R. Sec. 416.1338(a). The court referred simply to "the law of the case", App. at 38-39
 
 
 [4]
 The district court's opinion of April 27, 1983 discussed the invalidity of subparagraph (5) of the regulation as well as subparagraph (4), 563 F.Supp. at 1100. The court's order of December 6, 1983 in favor of the class invalidated the entire regulation. The Secretary has not argued for severance on appeal
 
 
 [5]
 The Secretary does not separately challenge the award of back benefits to Paskel, and we therefore do not address the propriety of such relief. Although the cross-appeal filed on behalf of the class raised the issue of the failure to award back benefits to the unnamed members of the class, in light of the withdrawal of the cross-appeal we do not reach the issue of the distinction made by the district court between Paskel and members of the class